**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Douglas Drift, | : | Civil Action No. 3:22-cv-07503 |
| Plaintiff, | : | |
| v. | : | |
| Diamond Materials, LLC, | : | |
| Defendant. | : | |

**DEFENDANT, DIAMOND MATERIALS, LLC'S MOTION TO DISMISS PLAINTIFF, DOUGLAS DRIFT'S COMPLAINT, WITH PREJUDICE**

**HYLAND LEVIN SHAPIRO LLP**
Megan Knowlton Balne / Attorney ID No. 021062010
Beau C. Wilson / Attorney ID No. 265042018
6000 Sagemore Drive, Suite 6301
Marlton, NJ  08053
Telephone: (856) 355-2900
balne@hylandlevin.com
wilson@hylandlevin.com
*Attorneys for Defendant, Diamond Materials, LLC*

Dated:  March 6, 2023

{H0323541.4}

# **TABLE OF CONTENTS**

**Preliminary Statement**..................................................................................................5

**Procedural History And Statement Of Facts** ...............................................................6

**Standard Of Review**....................................................................................................7

**Argument** ....................................................................................................................8

    **Point I**: Marijuana Use is Illegal under Federal Law...........................................8

    **Point II**: Plaintiff Cannot Establish That He Was "Qualified" For The Job Sought Due To His Use Of An Illegal Drug, And As Such, Cannot Establish A *Prima Facie* claim Under the ADA Against Diamond Materials ................................................................................8

       A: Plaintiff Was Not Qualified For The Job He Sought........................................9

    **Point III**: New Jersey Law Supports Diamond Materials' Position As CUMCA Does Not Create A Private Right Of Action And Affords Diamond Materials A Carve-Out Exception Ensuring It Will Not Lose Federal Funding And Plaintiff Is An "At-Will" Employee And Does Not Fall Within A Protected Class  ................................................................................10

       A: New Jersey State Law Did Not Create A Private Right of Action Under CUMCA And Even Went Further To Create A Carve-Out To Protect Entities That Receive Federal Funds Sought.................................................................................................................11

       B: Plaintiff's NJLAD Claims In Counts Three and Four Fail As A Matter Of Law Because Medical Marijuana Users Do Not Constitute A Protected Class ........................…  12

    **Point IV**: A State Statute May Not Be Used To Circumvent Federal Law And Any Attempt To Do So Must Be Rejected Due To The Preemption Doctrine .............................................14

       A: The Controlled Substances Act.......................................................................14

       B: The Drug-Free Workplace Act........................................................................15

       C: The Occupational Health And Safety Act.......................................................16

**Conclusion** ................................................................................................................17

# **TABLE OF AUTHORITIES**

### **Cases**

Anspach v. City of Philadelphia, 503 F.3d 256 (3d Cir. 2007) ....................................................... 7
Ashcroft v. Iqbal, 556 U.S. 662 (2009)......................................................................................... 7, 8
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................................... 7
Bernard v. IMI Sys., Inc., 131 N.J. 91 (1993) ............................................................................... 13
Brandon Coats v. Dish Network, LLC, 350 P.3d 849 (Colo. 2015)............................................... 14
Clowes v. Terminix Int'l, Inc., 109 N.J. 575 (1988)...................................................................... 12
Deane v. Pocono Med. Ctr., 142 F.3d 138 (3d Cir. 1998)............................................................... 9
Elansari v. Ragazzo, No. 21-1192, 2021 WL 2069957 (3d Cir. May 24, 2021) .......................... 13
Eplee v. City of Lansing, 327 Mich. App. 635 (2019) .................................................................. 13
Felder v. Casey, 487 U.S. 131 (1988)........................................................................................... 11
Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ............................................................. 7
Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) ............................................................................ 12
Gonzales v. Raich, 545 U.S. 1 (2005)................................................................................. 8, 14, 15
Hager v. M&K Const., 246 N.J. 1 (2021)................................................................................. 8, 12
Lehenky v. Toshiba Am. Energy Sys. Corp., No. 20-4573, 2022 U.S. Dist. LEXIS 30344 (E.D.
    Pa. Feb. 22, 2022)...................................................................................................................... 9
McCrone v. Acme Mkts., 561 F. App'x 169 (3d Cir. 2014) .......................................................... 13
Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997) ............................................... 7
Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325 (App. Div. 2021).................................... 13
R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255 (2001) ......................... 11
Salley v. Circuit City Stores, 160 F.3d 977 (3d Cir. 1998)............................................................ 10
United States v. Johnson, 228 F. Supp. 3d 57 (D.D.C. 2017) ........................................................ 9
United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483 (2001) ..................................... 9
Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416 (App. Div. 2019) ....................... 12
Wild v. Carriage Funeral Holdings, Inc., 241 N.J. 285 (2020).................................................... 12
Zabilowicz v. Kelsey, 200 N.J. 507 (2009) .................................................................................... 11

### **Statutes**

29 U.S.C. § 651............................................................................................................................. 16
41 U.S.C. § 8102........................................................................................................................... 15
42 U.S.C. § 12101........................................................................................................................... 8
42 U.S.C. § 12111........................................................................................................................... 9
42 U.S.C. § 12114...................................................................................................................... 9, 10
N.J. Stat. Ann. § 10:5-1................................................................................................................. 11
N.J. Stat. Ann. § 24:6I-2................................................................................................................ 11
N.J. Stat. Ann. § 24:6I-6.1 ....................................................................................................... 11, 16

### **Other Authorities**

Clarification of OSHA's Position on Workplace Safety Incentive Programs and Post-Incident
    Drug Testing Under 29 C.F.R. § 1904.35(b)(1)(iv), United States Department of Labor,
    Occupational Safety and Health Administration (Oct. 11, 2018) ........................................... 16

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 7

**Regulations**

29 C.F.R. § 1630.2 ........................................................................................................................ 9
29 C.F.R. § 1630.3 ...................................................................................................................... 10

Defendant, Diamond Materials, LLC ("Diamond Materials") hereby submits this brief in support of its Motion to Dismiss Plaintiff, Douglas Drift's ("Plaintiff") Complaint with prejudice (the "Motion").

## PRELIMINARY STATEMENT

Congress has identified "marihuana", commonly referred to as marijuana, as an illegal drug and classifies it as a Schedule I Drug. This means that there are no permitted accepted medical uses and that the drug has a high potential for abuse. Diamond Materials is a limited liability corporation formed in Delaware and conducts business throughout multiple states in the country. Diamond Materials is a construction contractor that largely performs heavy highway and site development work for private businesses and government entities and receives private contracts as well as public contracts.

Plaintiff was not hired by Diamond Materials for an at-will position as a laborer after Diamond Materials became aware that Plaintiff tested positive for marijuana following a mandatory pre-employment drug screening. Given the nature of Diamond Materials' business and specifically, its receipt, use and reliance upon funding from government entities and safety regulations for construction operations, the hiring and employment of individuals testing positive for illegal controlled substances would jeopardize Diamond Materials' public funding, public contract eligibility and Diamond Materials' compliance with federal workplace standards.

Plaintiff has not identified any law that would require him to be hired by Diamond Materials or even deem him qualified to be hired. Further, applicable State law does not and cannot require employers such as Diamond Materials to choose between: (a) hiring someone who tests positive for marijuana whose employment would jeopardize public funding and federal regulatory compliance; or (b) facing unsubstantiated claims of discrimination for not hiring that individual.

In short, Diamond Materials' business operations and the applicable legal framework governing those operations left Diamond Materials with two options as it pertained to the hiring and employment of Plaintiff. Option one, hire Plaintiff to avoid any appearance of discrimination, despite the fact that Plaintiff is deemed unqualified for the position due to his illegal drug use, and put Diamond Materials' critical public funding, contract eligibility and federal regulatory compliance at significant risk; or, option two, refuse to hire the Plaintiff and face unsubstantiated claims of discrimination. No law, New Jersey or Federal, requires an employer such as Diamond Materials to be forced into this type of "lose-lose" scenario.

Pursuant to the risks faced by Diamond Materials if it hired the Plaintiff, Diamond Materials validly determined that it could not hire the Plaintiff. The decision not to hire Plaintiff was, therefore, permissible by law, and required under federal law to protect the business interests and survival of Diamond Materials and not for any discriminatory or unlawful purpose.

Therefore, the Motion should be granted in its entirety.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

Diamond Materials is a construction company, incorporated in Delaware and authorized to conduct business in multiple states. (Dkt. 1, ¶¶ 11-13). On or around February 25, 2021, Plaintiff applied for a position with Diamond Materials. (Dkt. 1, ¶ 21). Approximately two weeks later, an employee for Diamond Materials emailed Plaintiff to schedule a drug test, which was scheduled for March 17, 2021. (Dkt. 1, ¶¶ 23-24). Thereafter, Plaintiff emailed the employee for Diamond Materials, informing her that he was "prescribed marijuana" and that he "will not pass the drug test for the company." (Dkt. 1, ¶ 25). The employee for Diamond Materials responded, saying that it would be "a problem only because the drug test is through the federal drug testing". (Dkt.

---

[1] The allegations in Plaintiff's Complaint are accepted as true solely for purposes of this Motion, pursuant to Fed. R. Civ. P. 12(b)(6).

1, ¶ 27). On or about March 17, 2021, Plaintiff submitted a sample to a urinalysis lab. (Dkt. 1, ¶ 31). Thereafter, on March 24, 2021, another employee for Diamond Materials called Plaintiff to inform him the test returned positive for marijuana. (Dkt. 1, ¶ 32). The same employee told Plaintiff "that if he did not call [back] Plaintiff, that meant [Plaintiff] would not be hired." (Dkt. 1, ¶ 32).

Several months later, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, received a right to sue letter and thereafter brought this action. (Dkt. 1, ¶¶ 6-8).

### STANDARD OF REVIEW

Diamond Materials seeks dismissal because Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a reviewing court must accept the plaintiff's factual allegations as true. However, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see also Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007) (quoting Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)) (conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent dismissal).

The court must determine whether the facts alleged in the complaint are "sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). "A complaint has to show such an entitlement

with its facts." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal quotations omitted)

## ARGUMENT

### POINT I

**MARIJUANA USE IS ILLEGAL UNDER FEDERAL LAW.**

Marijuana is illegal under federal law. See Hager v. M&K Const., 246 N.J. 1 (2021) ("Marijuana remains a Schedule I drug today."). Specifically, the Controlled Substances Act ("CSA"), prohibits the use of marijuana and classifies it as a Schedule I drug. 21 U.S.C. § 812. Because federal law prohibits the use of marijuana, even for medical purposes, it is a violation of Federal law to use marijuana, even in cases where a state law allows medical marijuana use. See Gonzales v. Raich, 545 U.S. 1, 29 (2005). This is the guiding principle for the remainder of the moving papers below. Because Plaintiff readily admits that he uses marijuana, which is an illegal Schedule I drug, any argument that Plaintiff was permitted to use marijuana is preempted by federal law, which prohibits the use of marijuana.

### POINT II

**PLAINTIFF CANNOT ESTABLISH THAT HE WAS "QUALIFIED" FOR THE JOB SOUGHT DUE TO HIS USE OF AN ILLEGAL DRUG, AND AS SUCH, CANNOT ESTABLISH A PRIMA FACIE CLAIM UNDER THE ADA AGAINST DIAMOND MATERIALS.**

Plaintiff's use of marijuana prevents him from being able to state a *prima facie* case of discrimination against Diamond Materials under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") because Plaintiff does not meet the ADA's definition of being "qualified" for the particular job. Moreover, his own pleadings evidence that Diamond Materials' decision to not hire him was based solely upon a positive drug test for marijuana. As a result, Counts One and Two of the Complaint (Dkt. 1, p. 6-7) involving alleged discrimination and retaliation under the

ADA must be dismissed as a matter of law.

### A. Plaintiff Was Not Qualified For The Job He Sought.

To demonstrate a *prima facie* case of disability discrimination, a plaintiff must establish all three of the following requirements: (1) that he is "disabled" within the meaning of the ADA; (2) that he is qualified for the particular job; and (3) that he has suffered an adverse employment action because of the disability. Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998).[2] The ADA states that a "qualified individual with a disability" does not include "any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). A covered entity includes "an employer," such as Diamond Materials. 42 U.S.C. § 12111(2).

The fact that Plaintiff is prescribed medical marijuana is of no moment as the CSA prevents marijuana from being validly prescribed. See United States v. Johnson, 228 F. Supp. 3d 57, 62 (D.D.C. 2017) (citing United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001)). As a result, Plaintiff cannot make the second factor, that he is qualified for the particular job, and thus cannot establish a *prima facie* case of discrimination.

A factually similar matter recently arose in the Third Circuit. Lehenky v. Toshiba Am. Energy Sys. Corp., No. 20-4573, 2022 U.S. Dist. LEXIS 30344 (E.D. Pa. Feb. 22, 2022). In Lehenky, a former employee filed suit against her former employer for termination after a drug test showed the presence of marijuana metabolites in her system. Id. at *1. The plaintiff suffered from Panniculitis and received an "over-the-counter" product that contained marijuana metabolites to treat that disease. Id. at *1-2. The Court rejected the plaintiff's arguments for several reasons,

---

[2] For purposes of this Motion, Diamond Materials does not seek to challenge whether the Plaintiff is "disabled" within the meaning of the ADA. Diamond Materials expressly reserves the right, should the Motion be denied, to challenge this position and whether Plaintiff's alleged disability "substantially limited" or significantly restricted the performance of a major life activity. See 29 C.F.R. § 1630.2(j).

but relevant to the present matter, because plaintiff's use of a product with marijuana metabolites "preclud[ed] Plaintiff from being deemed 'qualified.'" Id. at *8 (citing 42 U.S.C. § 12114(a)). As a result, the Court dismissed the case, with prejudice as "any attempt to amend would be futile." Id. at *18.

Here, Diamond Materials, a covered entity, properly conducted a drug test prior to employing Plaintiff (42 U.S.C. § 12114(d)) and determined that the Plaintiff was not eligible to be hired as a result of his positive drug test. Plaintiff cannot meet the crucial second prong required to establish that he was "qualified" for the position he sought. Further, Plaintiff cannot argue that he was not "currently engaging" in the illegal drug as he readily admits to using the marijuana "as needed in the evening." (ECF Dkt. 1, ¶ 16). The Third Circuit has interpreted that term "currently engaging" to be broader than "the use of drugs on the day, or within a matter of days or weeks before . . . [r]ather, 'the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct.'" Salley v. Circuit City Stores, 160 F.3d 977, 980 n.2 (3d Cir. 1998) (citing 29 C.F.R. § 1630.3)).

Therefore, Plaintiff cannot establish a *prima facie* case of discrimination or retaliation under the ADA and, as a matter of law, the first two counts of the Complaint must be dismissed with prejudice as any amendment would be futile.

## POINT III

**NEW JERSEY LAW SUPPORTS DIAMOND MATERIALS' POSITION AS CUMCA DOES NOT CREATE A PRIVATE RIGHT OF ACTION AND AFFORDS DIAMOND MATERIALS A CARVE-OUT EXCEPTION ENSURING IT WILL NOT LOSE FEDERAL FUNDING AND PLAINTIFF IS AN "AT-WILL" EMPLOYEE AND DOES NOT FALL WITHIN A PROTECTED CLASS.**

Should the Court determine not to immediately remand this matter to New Jersey State Court following the dismissal of Plaintiff's ADA claims, the Court should exercise supplemental jurisdiction over the pendent state law claims and dismiss the remaining three Counts against

Diamond Materials. See Felder v. Casey, 487 U.S. 131, 151 (1988) (a federal court may apply supplemental jurisdiction over pendent state law claims and will apply the substantive state law of the forum state). These Counts should be dismissed because New Jersey's Jake Honig Compassionate Use Medical Cannabis Act, N.J. Stat. Ann. § 24:6I-2, et seq. ("CUMCA") does not create a private right of action and it even provides a carve-out exemption for contractors who receive federal funding. Further, the Third and Fourth Counts should also be dismissed because Plaintiff is not part of a protected class, which is required under any New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 ("NJLAD" or "LAD") claim.

Therefore, Plaintiff's remaining state law claims should be dismissed with prejudice.

**A. New Jersey State Law Did Not Create A Private Right of Action Under CUMCA And Even Went Further To Create A Carve-Out To Protect Entities That Receive Federal Funds**

It is clear as a matter of law that CUMCA does not create a private right of action to permit Plaintiff to bring a direct claim against Diamond Materials. Consequently, the Fifth Count of Plaintiff's Complaint must be dismissed with prejudice.

The legislature is presumed to know how to draft language. See Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009) ("The Legislature knows how to draft a statute to achieve that result when it wishes to do so."). The plain text of the statute evidences there is no private right of action and Plaintiff fails to identify any language that would suggest otherwise. Further, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001). In fact, the plain language of the CUMCA statute provides an expressed carve-out for employers, such as Diamond Materials, who receive federal funding for their construction provides. Specifically, N.J. Stat. Ann. § 24:6I-6.1(c)(2) states that "[n]othing in this section shall be deemed to require an employer to commit any act that would cause the employer to

be in violation of federal law, that would result in a loss of a licensing-related benefit pursuant to federal law, or that would result in the loss of a federal contract or federal funding. CUMCA "does not alter preexisting employment rights and obligations" (Hager v. M&K Const., 246 N.J. 1 (2021)) in and of itself, and thus cannot afford a private right of action to Plaintiff. Further, CUMCA exempts Diamond Materials from being forced to commit an act, such as hiring Plaintiff, that would cause it to be in violation of federal law or result in a loss of federal contracts or federal funding.

In fact, the New Jersey Appellate Division held that the CUMCA did not "create a private cause of action against an employer for wrongful discharge." Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416, 428 n.3 (App. Div. 2019), aff'd, 241 N.J. 285 (2020). The New Jersey Supreme Court upheld the Appellate Division's published opinion in Wild with the slight caveat that provisions of the CUMCA "may affect a LAD discrimination . . . claim in certain settings." Wild, 241 N.J. at 288. The Court went on, stating that allegations involving CUMCA could inform the "circumstances surrounding a LAD disability discrimination claim" but that limited the movant to "that [LAD] claim." Id. at 288-89.

Therefore, the Fifth Count of Plaintiff's Complaint must be dismissed, with prejudice as a matter of law.

### B. Plaintiff's NJLAD Claims In Counts Three and Four Fail As A Matter Of Law Because Medical Marijuana Users Do Not Constitute A Protected Class

To properly plead a case of discrimination, specifically a failure to hire, under the NJ LAD, a plaintiff must show that he (1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). As stated above, Plaintiff

cannot properly plead the "qualification" prong as a result of his use of illegal drugs. Moreover, under the NJLAD, Plaintiff cannot show that he belongs to a protected class.

The Third Circuit has held that, "New Jersey is a presumptively 'at-will' employment state." McCrone v. Acme Mkts., 561 F. App'x 169, 172 (3d Cir. 2014) (citing Bernard v. IMI Sys., Inc., 131 N.J. 91 (1993). "In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine . . . [i]ndeed, absent an employment agreement 'providing otherwise' an employer may 'terminat[e] the employment of at-will employees for cause or for no cause.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 339 (App. Div. 2021).

A recent Michigan Court of Appeals properly and persuasively analyzed the employment-at-will doctrine under the lens of a patient using medical marijuana. Eplee v. City of Lansing, 327 Mich. App. 635, 655 (2019). The Eplee Court explained that the legal right to use medical marijuana under state law does not override an employer's right to decide whether or not to hire a potential employee or to fire an "at-will" employee. Ibid. The court held for the employer, explaining that rescinding a job offer that was conditioned on a negative drug test did not violate the prospective employee's legal rights. Ibid. In fact, the court reasoned that since the employer would have been able to terminate the employee's employment at any time after their employment began for any reason or no reason at all, "it logically follows" that the employer could rescind its conditional offer of employment at any time and for any or no reason at all. Ibid. Finally, the court explained that the medical use of marijuana does not create a "protected class" for users: "[t]he statute does not provide an independent *right* protecting the medical use of marijuana in all circumstances, nor does it create a protected class for users of medical marijuana." Id. at 657; see also Elansari v. Ragazzo, No. 21-1192, 2021 WL 2069957 (3d Cir. May 24, 2021) (holding that medical marijuana users are not members of a protected class).

Here, Diamond Materials was within its legal rights when choosing to rescind employment for an at-will prospective employee. New Jersey courts explicitly utilize the employment-at-will doctrine. While not binding, the persuasive reasoning in <u>Eplee</u> evidences that "it logically follows" from the employment-at-will doctrine that an employer could rescind its conditional offer of employment at any time and for any or no reason at all, just as they could terminate employment for any hired employee at any time and for any or no reason at all. Importantly, as the court in <u>Eplee</u> noted, medical marijuana users are not a "protected class" on the basis of being state-authorized to use medical marijuana and have no independent legal right to be employed because of such use, especially when there are severe penalties on the table for the employer. Accordingly, Diamond Materials acted in accordance with state and federal law when refusing to hire Plaintiff employee on the basis of their use of an illegal drug.

### POINT IV

**A STATE STATUTE MAY NOT BE USED TO CIRCUMVENT FEDERAL LAW AND ANY ATTEMPT TO DO SO MUST BE REJECTED DUE TO THE PREEMPTION DOCTRINE.**

Importantly, there are a multitude of federal laws that prohibit the use of marijuana and either prohibit or highly penalize an employer, such as Diamond Materials, from hiring an individual who is using an illegal drug under federal law. The NJLAD, a state statute, cannot be used as a means to thwart or circumvent federal law. <u>See</u> <u>Gonzales v. Raich</u>, 545 U.S. 1, 29 (2005).

**A. The Controlled Substances Act**

As detailed above, the CSA classifies marijuana as a Schedule I drug. A recent decision by Colorado's State Supreme Court is illustrative for the present matter and discusses the interplay between the CSA and any allegedly conflicting state laws. <u>Brandon Coats v. Dish Network, LLC</u>, 350 P.3d 849 (Colo. 2015).

In <u>Coats</u>, an employee was discharged due to his state-licensed use of medical marijuana

at home during non-work hours. Id. at 850. The employer required its employee to take drug test and the employee tested positive for marijuana. Id. at 850-51. The employee was upfront with his employer, informing his employer that he was disabled and a registered medical marijuana patient. Id. at 850. Despite this, the employee was fired by his employer. Id. at 851. The employee, relying upon Colorado's Medical Marijuana Amendment to its State Constitution (Colo. Const. art. XVIII, § 14) sued his employer, arguing that he should not have been fired because he was permitted to engage in "lawful activities" during nonwork hours. Id. at 851.

The Colorado Supreme Court rejected the employee's argument, and held that the CSA prohibits marijuana use and that there was "no exception for marijuana use for medicinal purposes or for marijuana use conducted in accordance with state law." Id. at 852. Further, the Court cited the United State Supreme Court, holding that "'[t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail,' including in the area of marijuana regulation." Ibid. (citing Gonzales, 545 U.S. at 29. Because the CSA prohibits any use of marijuana, an employer could discharge its employee for their unlawful activities without fear of allegations such as wrongful termination.

Here, Diamond Materials' case is even stronger than the employer in Coats. Not only would the CSA preempt any conflicting state statute, but the CSA also provides Diamond Materials with the authority to discharge or choose to not hire an employee who violates the CSA. As a result, Plaintiff's attempts to bypass federal law through its claims under the NJLAD should be rejected and Diamond Materials' motion should be granted in full.

### B. The Drug-Free Workplace Act.

According to the Drug-Free Workplace Act ("DFW Act"), federal contractors are required to make a "good faith effort" to comply with the DFW Act. See 41 U.S.C. § 8102. The DFW Act specifies that "[p]ayment under a contract awarded by a Federal agency may be suspended and the

contract may be terminated, and the contractor or individual who made the contract with the agency may be suspended or debarred in accordance with the requirements of this section, if the head of the agency determines that . . . [there has been a failure to maintain a drug-free workplace per the DFW Act]." Id.  Once Diamond Materials became aware that Plaintiff tested positive for marijuana, Diamond Materials lawfully refused to hire Plaintiff, because the alternative would mean that Diamond Materials could face serious penalties, such as suspension or termination of its federally funded contracts and prohibition from applying for future government funding.  As such, Diamond Materials, in accordance with the DFW Act and state law (see N.J. Stat. Ann. § 24:6I-6.1(c)(2)), appropriately refused employment to a potential employee who tested positive for marijuana.

### C. Occupational Health And Safety Act.

The Occupational Safety and Health Act ("OSHA") also regulates employee use of marijuana.  See 29 U.S.C. § 651 *et seq.*  OSHA requires that employers remain in compliance with federal protective safety and health standards in order to provide a safe workplace for employees. Per OSHA's General Duty Clause (29 U.S.C. § 654), employers must keep their workplaces free of "recognized hazards that are causing or are likely to cause death or serious physical harm" to their employees.  Additionally, OSHA has issued memorandum permitting drug testing and adverse employment actions after accidents occur on the worksite. See Clarification of OSHA's Position on Workplace Safety Incentive Programs and Post-Incident Drug Testing Under 29 C.F.R. § 1904.35(b)(1)(iv), United States Department of Labor, Occupational Safety and Health Administration (Oct. 11, 2018) (Permitting employers to "conduct" and make decisions based upon "post-incident drug testing" if it is done "to promote workplace safety and health.").

The Court should not ignore the reality that Plaintiff was applying to work on a construction site.  An employee who uses an illegal Schedule I substance may present serious issues and

concerns for employee health and safety. Plaintiff was refused a safety-sensitive position as a general construction laborer who would have been on construction sites with heavy equipment and machinery. While Diamond Materials actively attempts to prevent all work-place accidents, they do sometimes occur, and had one occurred, Plaintiff would have been subject to a "post-incident drug test", which would have resulted in a positive test for a Schedule I drug. Accordingly, Diamond Materials properly refused to hire Plaintiff in order to keep its employees safe and to comply with federal law.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendant's Motion to Dismiss be granted in its entirety.

Respectfully submitted,

HYLAND LEVIN SHAPIRO LLP

By: *[signature]*

Megan Knowlton Balne, Esquire
Attorney for Defendant,
Diamond Materials LLC

Dated: March 6, 2023