Jesse S. Weinstein, Esq.
Attorney ID #: 388422021
Phillips & Associates, PLLC
45 Broadway, Suite 430
New York, NY 10006
(212)-248-7431
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOUGLAS DRIFT,<br><br>**Plaintiff**,<br><br>v.<br><br>DIAMOND MATERIALS, LLC,<br><br>**Defendant.** | Case No.: 3:22-cv-07503-ZNQ-RLS<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Phillips & Associates, PLLC
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, NY 10006
(212) 248-7431

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**…………………………………………………………………ii

**PRELIMINARY STATEMENT**………………………………………………………...1

**STATEMENT OF MATERIAL FACTS**………………………………………………1

**STANDARD OF REVIEW**……………………………………………………………3

**LEGAL ARGUMENT**………………………………………………………………...4

    **I.    PLAINTIFF IS A QUALIFIED INDIVIDUAL UNDER THE ADA**…………………4

    **II.    CUMCA CREATES A PRIVATE CAUSE OF ACTION AND DOES NOT PROHIBIT COMPANIES THAT RECEIVE FEDERAL FUNDS FROM HIRING EMPLOYEES THAT USES MEDICAL MARIJUANA OUTSIDE THE WORKPLACE**………………………………………………………………...7

    **III.    THE CSA DOES NOT PREEMPT THE LAD** ………………………………12

**CONCLUSION**…………………………………………………………………14

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………...……….4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………….4

*Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017 R.I. Super. LEXIS 88 (R.I. Super. May 23, 2017)………..……………………………………………………………8

*Chance v. Kraft Heinz Foods Co.*, No. CV-K18C-01-056 NEP, 2018 Del. Super. LEXIS 1773 (Del. Super. Ct. Dec. 17, 2018)………..…………………………………………………..8

*Cotto v. Ardagh Glass Packing, Inc.*, No. 18-1037 (RBK/AMD), 2018 U.S. Dist. LEXIS 135194 (D.N.J. August 10, 2018)……………………………………………………………...13

*Gonzales v. Oregon*, 546 U.S. 243 (2006)……………………………………………...…6

*Gonzales v. Raich*, 545 U.S. 1 (2005)………………………………………………………12

*Harris v. Aerospace Testing All.*, No. 1:07-cv-94, 2008 U.S. Dist. LEXIS 1185 (E.D. Tenn. 2008)……………………………………………………………………………………..10

*Hine v. Davidowits*, 312 U.S. 52 (1941)…………………………………………………………12

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011)…………………………………………………4

*Noffsinger v. SSC Niantic Operating Co. LLC.*, 273 F. Supp. 3d 326 (D. Conn. 2017)…...5, 8, 12

*Noffsinger v. SSC Niantic Operating Co., LLC*, 338 F. Supp. 3d 78 (D. Conn. 2018)…............11

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)………………………………..3, 4

*Skerski v. Time Warner Cable Co.*, 257 F.3d 273 (3d Cir. 2001)…………………………….4

*Wild v. Carriage Funeral Holdings, Inc.*, 458 N.J. Super. 416 (App Div. 2019)……………..9, 10

*Wild v. Carriage Funeral Holdings, Inc.*, 241 N.J. 285 (2020) …………………………..8

*Whitmire v. Wal-Mart Stores, Inc.,* 359 F. Supp. 3d 761 (D. Ariz. 2019*)*……………….............8

**Statutes, Rules, and Regulations**

21 U.S.C. § 801……………………………………………………………………………6
21 U.S.C. § 903…………………………………………………………………………..6, 12

29 U.S.C. § 651……………………………………………………………………………………..10
41 U.S.C. § 701……………………………………………………………………………………..10
41 U.S.C. § 701(a)(1)……………………………………………………………………………….10
41 U.S.C. § 702(a)(1)……………………………………………………………………………….10
42 U.S.C. § 12101………………………………………………………………………………….1
42 U.S.C. § 12111(6)(A) …………………………………………………………………………..6
42 U.S.C. § 12111(8) ……………………………………………………………………………….4
42 U.S.C. § 12114(a)………………………………………………………………………………..5
42 U.S.C. § 12114(c)………………………………………………………………………………..5


N.J.S.A. 10:5-12………………………………………………………………………………….1
N.J.S.A. 24:6I-1…………………………………………………………..........................1
N.J.S.A. 24:6I-6.1…………………………………………………………………………………12
N.J.S.A. 24:6I-6.1(a) ……………………………………………………………………………...7
N.J.S.A. 24:6I-6.1(b)…………………………………………………………………………….7
N.J.S.A. 24:6I-6.1(c)(1) ………………………………………………………………………….7
N.J.S.A. 24:6I-14……………………………………………………………………………………9
N.J.S.A. 24:6I-14(c)(2)……………………………………………………………………………10
N.J.S.A. 24:6I-31……………………………………………………………………………………13
N.J.S.A. 24:6I-52(a)(1)…………………………………………………………………….......13

## PRELIMINARY STATEMENT

Plaintiff, by and through his attorneys, Phillips & Associates, PLLC, respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint. Defendant's Motion should be denied in its entirety because Plaintiff has plainly stated a facially plausible claim of discrimination and relation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the New Jersey Law Against Discrimination N.J.S.A. 10:5-12, *et seq.* ("LAD"), and the Jake Honig Compassionate Use Medical Cannabis Act, N.J.S.A. 24:6I-1, *et seq.* ("CUMCA").  For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety.

## STATEMENT OF MATERIAL FACTS & PROCEDURAL HISTORY

In or around 2020, Plaintiff was diagnosed with generalized anxiety disorder, which, at times, caused Plaintiff to experience a persistent sense of anxiety and panic.  (Plaintiff's Complaint, Ex. 1, ¶15).  That same year, Plaintiff was prescribed medicinal marijuana, pursuant to CUMCA, to manage the effects of his generalized anxiety disorder.  (Ex. 1, ¶ 16).  Plaintiff used the medicinal marijuana as needed in the evening, but never during the day.  (*Id*.).

By way of background, from early 2020 through February 2021, Plaintiff worked for Defendant's predecessor company, "Advanced Pavement Group ("APG")," a construction business.  (Ex. 1, ¶ 17).  In or around February 2021, due to the financial impact of the COVID-19 pandemic, APG ceased its operations and Defendant absorbed APG's remaining contracts.  (Ex. 1, ¶ 18).  After this transition, Plaintiff's former supervisor at APG, Todd Bigelow, became Defendant's Vice President and General Manager.  (Ex. 1, ¶ 19).

In or around the second week of February 2021, Mr. Bigelow emailed Plaintiff and instructed him to apply for a position with Defendant as a laborer.  (Ex. 1, ¶ 20).  Accordingly, on

or about February 25, 2021, Plaintiff applied for a laborer position with Defendant, which would have required Plaintiff to work at various contracted job sites throughout the 2021 construction season. (Ex. 1, ¶ 21). This position, like Plaintiff's previous position at APG, also required general manual labor, with a primary focus on asphalt paving, and required the use of shovels, rakes, and other small tools.   (Ex. 1, ¶ 22).  The pay rate would have been $24 per hour, and Plaintiff was expected to work between 45 to 50 hours per week.  (*Id*.).

On or about March 11, 2021, Administrative Assistant, Penny Hildemann, e-mailed Plaintiff and asked whether he could go for a "drug and lift test" the following week.  (Ex. 1, ¶ 23) (s*ee also* Ex. 3, Email Correspondence Between Plaintiff and Defendant).  Later that day, Plaintiff emailed Ms. Hildemann that he was available to go on Wednesday, March 17, 2021 or Thursday, March 18, 2021.   (Ex. 1, ¶ 24) (*See also* Ex. 3).  Ms. Hildemann then scheduled the test for Wednesday, March 17, 2021 at 8:00AM.  (*Id*.) (s*ee also* Ex. 3).  On or about March 15, 2021, Plaintiff e-mailed Ms. Hildemann, "I am prescribed medical marijuana. So I will not pass the drug test for the company.  For THC.  If this is a problem, please let me know."  (Ex. 1, ¶ 25) (s*ee also* Ex. 3).

The next day, Ms. Hildemann e-mailed Plaintiff, "Unfortunately it's a problem only because the drug test is through the federal drug testing and not the state drug testing. Sorry."  (Ex. 1, ¶ 26) (*see also* Ex. 3).  That same day, Plaintiff replied to Ms. Hildemann's email, "So I would be taking the Department of Transportation drug test?"  (Ex. 1, ¶ 27) (s*ee also* Ex. 3).  Ms. Hildemann replied, "No you will not be hired. You will not pass either one according to Diamond Material standard drug testing."   (Ex. 1, ¶ 27) (s*ee also* Ex. 3).  Ms. Hidemann presented this "lose-lose" scenario to Plaintiff because Defendant discriminates against medical marijuana users. (Ex. 1, ¶ 27).

Later that day, Ms. Hildemann called Plaintiff, told him that there was a "misunderstanding," and instructed Plaintiff to appear for the test as scheduled. (Ex. 1, ¶ 28). In reality, Ms. Hildemann sought to cover up Defendant's discriminatory animus towards Plaintiff by sending him for the drug test, despite knowing that she was never going to hire him. (Ex. 1, ¶ 29). Nevertheless, on or about March 17, 2021, Plaintiff arrived at Defendant's location in South Plainfield, NJ and met with Safety Coordinator, Brian Smith. (Ex. 1, ¶ 30).

Once there, Plaintiff told Mr. Smith about his reason for using medical marijuana, provided Mr. Smith with a copy of his medical marijuana registry identification card, and completed the onboarding paperwork. (Ex. 1, ¶ 31). Mr. Smith told Plaintiff, "If you come up positive for any drugs other than THC, you will not be hired" and instructed Plaintiff to submit to the urinalysis at a nearby laboratory. Plaintiff complied. (*Id.*). On or about March 24, 2021, Mr. Smith called Plaintiff and told him that he tested positive for marijuana. (Ex. 1, ¶ 32). Mr. Smith further stated that he needed to confirm with Defendant's legal counsel as to whether they could hire Plaintiff, that he would let Plaintiff know within a couple days, but that if he did not call Plaintiff, that meant he would not be hired. (*Id.*). Mr. Smith never contacted Plaintiff. (Ex. 1, ¶ 33).

On September 21, 2021, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). (Ex. 1, ¶ 7). On September 28, 2022, Plaintiff received a Right to Sue Letter (Ex. 1, ¶ 6), and filed this action on December 23, 2022. On March 6, 2023, Defendant filed the instant Motion to Dismiss Plaintiff's Complaint.

## **STANDARD OF REVIEW**

In considering a motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal is inappropriate even when "it appears unlikely that

the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.  However, at the same time, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Therefore, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Applying the principles of *Iqbal* and *Twombly*, the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), set forth a three-part test for evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  First, the court must "identif[y] the elements of the claim." *Id*.  Second, the court must "review the complaint to strike conclusory allegations." *Id*.  Third, the court must "look at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id*.

## LEGAL ARGUMENT

### I.   PLAINTIFF IS A QUALIFIED INDIVIDUAL UNDER THE ADA

In order to plead a *prima facie* case of disability discrimination under the ADA, Plaintiff must allege (1) that he is disabled within the meaning of the statute, (2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability.  *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001).  The ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position" sought.  42 U.S.C. § 12111(8).

For purposes of its ADA analysis, Defendant does not challenge or contest Plaintiff's disability status.  (Ex. 2, Defendant's Motion to Dismiss, p. 9).  Instead, Defendant argues that

Plaintiff cannot establish the second prong of his *prima facie* because he is not "qualified" for the laborer position based on his use of medical marijuana. (Ex. 2, pp. 9-10). In support of it Motion, Defendant cites to 42 U.S.C. § 12114(a), a provision of the ADA which states that "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs." (Ex. 2, p. 9). However, Defendant conveniently ignores other important subdivisions of the statute which make clear that the ADA was never intended to regulate drug use ***outside the workplace***, nor was it intended to exclude from its protections those individuals using drugs under the supervision of licensed professionals.

The plain language of § 12114(c) provides than an employer may "may prohibit the illegal use of drugs and the use of alcohol ***at the workplace***," not outside of it. (Emphasis added). As another district court has recognized, "the fact that the ADA does not further provide that an employer may prohibit an employee from the illegal use of drugs *outside of the workplace* is a powerful indication that the ADA was not meant to regulate non-workplace activity, much less to preclude the States from doing so or to preclude the States from prohibiting employers from taking adverse actions against employees who may use illegal drugs outside the workplace (and whose drug use does not affect job performance)." *Noffsinger v. SSC Niantic Operating Co. LLC.*, 273 F. Supp. 3d 326, 337 (D. Conn. 2017) (emphasis added).

The facts of this case do not involve an employee who intended or needed to use medicinal marijuana within the workplace. As stated above, Plaintiff only used medical marijuana in the evening, never during work hours, and to treat a disability. (Ex. 1, ¶ 16). Plaintiff also worked at Defendant's predecessor company for a year while being prescribed medical marijuana (Ex. 1, ¶ 17), and there is nothing to suggest that his off-duty marijuana use impaired his ability to work

during that time.  If it did, Defendant certainly would not have invited Plaintiff to apply for the position in the first place.  (Ex. 1, ¶ 20).

Furthermore, ADA's definition of illegal drugs "**does *not* include the use of a drug under supervision by a licensed health care professional**, or other uses authorized by the Controlled Substance Act or other provisions of federal law."  42 U.S.C. § 12111(6)(A).  (Emphasis added). Defendant relies on the later portion of this definition to argue that because the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* ("CSA"), classifies marijuana as a Schedule I drug with no accepted medical use, Plaintiff has no right to use medicinal marijuana under the ADA.  (Ex. 2, pp. 5, 14-15).

However, the Supreme Court has recognized that the CSA "contemplates a role for the States in regulating controlled substances," including marijuana.  *Gonzales v. Oregon*, 546 U.S. 243, 251 (2006).  In fact, the CSA specifically states that none of its provisions "shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates … to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together."  21 U.S.C. § 903.  Thirty-eight states, including New Jersey, have established medical cannabis programs since 1996.  Since then, no Attorney General, the nation's Chief law enforcement officer, has invoked 21 U.S.C. § 903 to find a "positive conflict" between the CSA and a state cannabis program.

As such, Plaintiff's use of medical marijuana pursuant to the supervision of a licensed healthcare professional is exempt from the ADA's exclusion of coverage for individuals engaging in the illegal use of drugs, and authorized under the CSA.  Here, while Plaintiff did not require what one might consider a "typical accommodation" – such as a modified work schedule or special

equipment – he did require an accommodation with respect to how Defendant responded to the failure of a drug test based upon his disability and authorized medical marijuana use.  Nevertheless, without engaging in any discussion with Plaintiff regarding the parameters of his disability or use of medical marijuana, Defendant decided not to hire him.  Based on the above, Plaintiff has pled a facially plausible claim of discrimination and relation under the ADA.

## II.   CUMCA CREATES A PRIVATE CAUSE OF ACTION AND DOES NOT PROHIBIT COMPANIES THAT RECEIVE FEDERAL FUNDS FROM HIRING EMPLOYEES THAT USES MEDICAL MARIJUANA OUTSIDE THE WORKPLACE

New Jersey's CUMCA provides that "[i]t shall be unlawful to take any adverse employment action against an employee who is a registered qualifying patient based solely on the employee's status as a registrant with the [Cannabis Regulatory Commission]." N.J.S.A. 24:6I-6.1(a).  N.J.S.A. 24:6I-6.1(b) further provides that, "[i]f an employer has a drug testing policy and an employee or job applicant tests positive for cannabis, the employer **shall** offer the employee or job applicant an opportunity to present a legitimate medical explanation for the positive test result." Additionally, CUMCA limits an "employer's right to take action relating to an employee's possession or use of intoxicating substances" to "**work hours**" and when the employee is on "**the premises of the workplace outside of work hours**." N.J.S.A. 24:6I-6.1(c)(1).  (Emphasis added).

A common sense reading of CUMCA shows that the New Jersey legislature intended to create a private remedy for registered medical marijuana users.  The legislature would not have included the protections of N.J.S.A. 24:6I-6.1(a) and 24:6I-6.1(b) if it did not want to ensure that registered medical marijuana users had a private remedy if employers discriminated against them based on their cardholder status.  Furthermore, if there is any question as to whether CUMCA creates a private right of action, the New Jersey Supreme Court has affirmatively stated that

"[CUMCA] *does* have an impact on plaintiff's existing employment rights." *Wild v. Carriage Funeral Holdings, Inc.*, 241 N.J. 285, 288 (2020).

In fact, several courts had found private remedies for discrimination based upon cardholder status in medical marijuana statutes that do not contain an explicit cause of action. *Noffsinger*, 273 F. Supp. 3d at 340, *Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017 R.I. Super. LEXIS 88, at *23-24 (R.I. Super. May 23, 2017), *Chance v. Kraft Heinz Foods Co.*, No. CV-K18C-01-056 NEP, 2018 Del. Super. LEXIS 1773, at *17-18 (Del. Super. Ct. Dec. 17, 2018), and *Whitmire v. Wal-Mart Stores, Inc.,* 359 F. Supp. 3d 761, 781 (D. Ariz. 2019*)*, are all cases in which courts found private rights of action where their respective statutes expressly prohibited employment discrimination based upon cardholder status, but contained no express cause of action.

In each case, the courts reasoned that failing to find a private cause of action would be absurd and frustrate the legislative intent of the statutes. *See Noffsinger*, 273 F. Supp. 3d at 340 ("… [W]ithout a private cause of action, [the anti-discrimination clause] would have no practical effect, because the law does not provide for any other enforcement mechanism."); *Callaghan*, 2017 R.I. Super. LEXIS 88, at *23 ("The [Rhode Island medical marijuana act] must have an implied private right of action.  Without one, [its employment provision] would be meaningless."); *Chance*, 2018 Del. Super. LEXIS 1773, *13 ("Absent a finding of an implied private right of action, [the employment protections] would be devoid of any purpose within the broader context of the statute."); *Whitmire*, 359 F. Supp. 3d at 781 (holding the employment protections "'effectuates the evident legislative purpose' of preventing discrimination in employment against qualifying patients using medical marijuana outside of the workplace since the law lacks any explicit enforcement mechanism.").

On this point, Defendant's characterization of the holding in *Wild*'s prior Appellate Division decision, 458 N.J. Super. 416 (App Div. 2019), *aff'd* 241 N.J. 285 (2020), is completely inaccurate.  The Appellate Division did not hold that there is no private cause of action under CUMCA.  In fact, the court left the question unanswered because the employee there did not specifically "allege a newly-created private cause of action for wrongful discharge" under the statute.  458 N.J. Super. at 428 n.3.  Secondly, the *Wild* case actually undermines Defendant's position, and bolsters Plaintiff's.

In *Wild*, the plaintiff used medical marijuana as part of his cancer treatment.  *Id*. at 424.  After being involved in a vehicle accident while working, the plaintiff informed both his doctor and his employer that he had been using medical marijuana outside of work.  *Id*. at 425.  Although his doctor did not perform a drug test because he did not perceive the plaintiff to be impaired at the time of the accident, the plaintiff's employer later required him to submit to a drug test before allowing him to return to work.  *Id*.  While the Appellate Division noted that the results of the test were not in the record, it recognized that the complaint alleged that the employer told the plaintiff his employment was being terminated because of the positive drug test and because he failed to disclose his marijuana use, which might adversely affect his ability to perform his job.  *Id*. at 425-26.

In its motion to dismiss, the employer relied on N.J.S.A. 24:6I-14 to argue that nothing in CUMCA "require[s] . . . an employer to accommodate the medical use of marijuana *in any workplace*."  *Id*. at 433-34.  The Appellate Division disagreed, and found that nothing in CUMCA abrogates an employee's protections under the LAD.  *Id*.  In reaching its decision, the court relied on the fact the employee "alleged only that he sought an accommodation that would allow his continued use of medical marijuana 'off-site' or during 'off-work hours,'" did not request an

accommodation to use medical marijuana *in the workplace*, and found that the plaintiff sufficiently pled a cognizable cause of action under the NJLAD to survive the motion to dismiss. *Id*. Without question, the *Wild* decision confirms that an employee's mere notification of lawful medical marijuana use to their employer may be sufficient to trigger the employer's duty to engage in the interactive process regarding possible accommodations.

Here, Defendant attempts to distinguish itself from *Wild* by relying on N.J.S.A. 24:6I-14(c)(2), as opposed to N.J.S.A. 24:6I-14.  N.J.S.A. 24:6I-14(c)(2) states that CUMCA does not "require an employer to commit any act that would cause the employer to be in violation of federal law, that would result in a loss of a licensing-related benefit pursuant to federal law, or that would result in the loss of a federal contract or federal funding."  However, like the ADA and LAD, the two statues under which Defendant claims it can purportedly lose funding or incur penalties, the Drug-Free Workplace Act, 41 U.S.C. §§ 701 *et seq.* ("DFWA"), and the Occupational Health and Safety Act, 29 U.S.C. §§ 651 *et seq.* ("OSHA"), do not prohibit the use medical marijuana outside the workplace.

As a preliminary matter, the DFWA does not even require drug testing.  *See Harris v. Aerospace Testing All.*, No. 1:07-cv-94, 2008 U.S. Dist. LEXIS 1185, at *10-11 (E.D. Tenn. 2008). Nor "does any section [of the DWFA] set out a procedure for conducting drug testing." *Id*.  Rather, a recipient of federal funds under the DFWA must publish a statement prohibiting the illegal use of any controlled substance, establish a drug-free awareness program, notify each employee of both the statement and the program, and when, or if, an employee is convicted of a criminal drug offense, the recipient of funds must either sanction that employee or require the employee to participate in a drug abuse assistance rehabilitation program. *Id*.  (citing 41 U.S.C. §§ 701(a)(1), 702(a)(1)).  Nothing in the DFWA "prohibit[s] federal contractors from employing someone who

10

uses illegal drugs outside of the workplace, **much less an employee who uses medical marijuana outside the workplace in accordance with a program approved by state law**." *Noffsinger v. SSC Niantic Operating Co., LLC*, 338 F. Supp. 3d 78, 84 (D. Conn. 2018).

Similarly, OSHA does not specifically authorize or require pre-employment drug testing. The Department of Labor has also advised it does not view current drug testing methods for marijuana as an effective way of determining whether an impairment caused or contributed to a workplace accident: "For substances other than alcohol, current[ ] available tests are generally unable to establish a relationship between impairment and drug use. Employers should be aware that post-incident drug testing will not necessarily indicate whether drug use played a direct role in the incident."[1]

In this case, Plaintiff failed a drug-test and was denied a position (which he previously held) because he tested positive for marijuana during a pre-employment drug screening. (Ex. 1, ¶ 32). This does not mean that Plaintiff was under the influence of marijuana when the test was administered, or that his medical marijuana use would have impaired his ability to perform the job. Also, while Defendant would have the Court believe otherwise, the laborer position at issue is not a "safety-sensitive" role that would require Plaintiff to use heavy equipment or machinery. (Ex. 2, p. 17). To the contrary, and as Plaintiff has alleged, the position required general manual labor tasks, with a primary focus on asphalt paving, and required the use of shovels, rakes, and other small tools. (Ex. 1, ¶ 22). Here, Defendant decided not hire Plaintiff once it discovered that he used medical marijuana. If every employer in New Jersey was able to condition employment on a negative drug test, it suffices to say CUMCA's protections for medical marijuana users would

---

[1] Department of Labor, OSHA, Injury Tracking and Use of Disciplinary, Incentive or Drug Testing Programs, https://www.osha.gov/recordkeeping/modernization-guidance (follow "Drug Testing Programs" hyperlink) (last visited March. 19, 2023).

be rendered completely useless.  The New Jersey legislature did not intend for such an absurd, toothless remedy when it chose to include the employment protections of <u>N.J.S.A.</u> 24:6I-6.1. Because a common sense reading of CUMCA demonstrates that the New Jersey legislature intended to create a private remedy for cardholding employees facing employment discrimination, this factor weighs in favor of finding an implied right of action under the statute.  And because Plaintiff has specifically alleged that he was denied the laborer position based on his cardholder status (Ex. 1, ¶¶ 31, 34, and 56), he has sufficiently pled a claim for discrimination under CUMCA.

## III.    THE CSA DOES NOT PREEMPT THE LAD

It is without question that federal law *can* preempt state law. The critical inquiry is whether or not it, in fact, does in this case.  The CSA makes it a federal crime to use, possess, or distribute marijuana. "The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances."  *Gonzales v. Raich*, 545 U.S. 1, 12 (2005).  To carry out these goals, "Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA."  *Id*. at 13.  "The CSA, however, does not make it illegal to employ a marijuana user." *Noffsinger*, 273 F. Supp. 3d at 334.  "Nor does it purport to regulate employment practices in any manner.  It also contains a provision that explicitly indicates that Congress did not intend for the CSA to preempt state law 'unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.'"  *Id*. (quoting 21 U.S.C. § 903).

A "positive conflict" exists only if it is "physically impossible" to comply with both state and federal law, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of congress."  *Hine v. Davidowits*, 312 U.S. 52, 67 (1941).  A

12

state's decision to exempt certain individuals from the state prohibition on marijuana by permitting the drug's use for medicinal purposes does not create a "positive conflict" with federal law.  Simply put, nothing is CUMCA makes it impossible to comply with federal law or limits the ability of federal authorities to regulate or punish drug usage within New Jersey.

As a final point, Plaintiff implores the Court to recognize that any reliance on *Cotto v. Ardagh Glass Packing, Inc.*, No. 18-1037 (RBK/AMD), 2018 U.S. Dist. LEXIS 135194 (D.N.J. August 10, 2018) for the proposition that the LAD does not require an employer to accommodate an employee's use of medical marijuana with a drug test waiver, is logically inconsistent with New Jersey's recently enacted Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 ("CREAMMA").

To be clear, with respect to an employer's obligations surrounding the use of medical marijuana, CUMCA governs.  That said, CREAMMA, which governs recreation marijuana, prohibits employer from refusing to hire or employ any person because that person does or does not smoke, vape, aerosolize or otherwise use "cannabis items."   N.J.S.A. 24:6I-52(a)(1). Curiously, CREAMMA excludes medical marijuana from its definition of "cannabis items." N.J.S.A. 24:6I-33.  However, at the same time, under CREAMMA, an employer may require employees to submit to drug tests ***only***: (a) upon suspicion of cannabis use while the employee is engaged in the performance of their work responsibilities; (b) upon finding any observable signs of intoxication related to usage of a cannabis item; or (c) following a work-related accident (subject to investigation by the employer).  N.J.S.A. 24:6I-52(a)(1) (emphasis added).

Plaintiff imagines that any court would have difficulty reconciling the fact that on one hand, a New Jersey employer is barred from drug testing recreational marijuana users under CREAMMA, but can refuse to hire someone licensed to use medical marijuana under CUMCA if

13

that induvial test positive for marijuana during a pre-employment drug screening.  As such, the only logical conclusion is that the New Jersey legislature intended CREAMMA's prohibition on adverse actions against employees for using cannabis outside of the workplace to completely envelop the CUMCA.

In summary, the facts set forth by Plaintiff support a cause of action for discrimination and retaliation under the LAD.  Here, Plaintiff has sufficiently pled that he suffered from a disability, that his prospective employer was aware of his disability, that he could perform the essential functions of the laborer position with a reasonable accommodation (a pre-employment drug test waiver), and suffered an adverse employment action when Defendant failed to hire him.  (Ex. 1, ¶¶ 9, 15-17, 25, 30-32, and 34).  As such, Plaintiff has pled a facially plausible claim of disability discrimination under the NJLAD.

## CONCLUSION

In light of the above, for the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss Plaintiff's Complaint be denied in its entirety, together with any other relief the Court deems just and proper.

Dated:  New York, New York
        March 20, 2023

Phillips & Associates, PLLC

Respectfully submitted,

*/s/ Jesse S. Weinstein, Esq.*
Jesse S. Weinstein, Esq.
Attorney ID #: 388422021
45 Broadway, Suite 430
New York, NY 10006
(212)-248-7431

To:   **HYLAND LEVIN SHAPIRO LLP**
Megan Knowlton Balne / Attorney ID No. 021062010
Beau C. Wilson / Attorney ID No. 265042018
6000 Sagemore Drive, Suite 6301
Marlton, NJ 08053
Telephone: (856) 355-2900
balne@hylandlevin.com
wilson@hylandlevin.com
*Attorneys for Defendant, Diamond Materials, LLC*

Jesse S. Weinstein, Esq.
Attorney ID #: 388422021
Phillips & Associates, PLLC
45 Broadway, Suite 430
New York, NY 10006
(212)-248-7431
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOUGLAS DRIFT, | Case No.: 3:22-cv-07503-ZNQ-RLS |
| **Plaintiff**, | |
| v. | **AFFIRMATION OF JESSE S. WEINSTEIN, ESQ. IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| DIAMOND MATERIALS, LLC, | |
| **Defendant**. | |

I, Jesse S. Weinstein, am an attorney duly admitted to practice law before the United States District Court for the District of New Jersey, and affirm the truth of the following under the penalties of perjury:

1.     I am a Partner of Phillips & Associates, PLLC, attorneys for the Plaintiff in the above-entitled action.  As such, I am fully familiar with the facts and circumstances contained herein.

2.     I submit this Affirmation in Support of Plaintiff's Opposition to Motion to Dismiss Plaintiff's Complaint.

3.     Attached hereto as "**Exhibit 1**" is a true and correct copy of Plaintiff's Complaint.

4.     Attached hereto as "**Exhibit 2**" is a true and correct copy of Defendant' Motion to Dismiss Plaintiff's Complaint.

5.      Attached hereto as "**Exhibit 3**" is a true and correct copy of Email Correspondence between Plaintiff and Defendant.

I declare under penalty of perjury that the foregoing is true and correct and was executed on this 20th day of March, 2023 in New York, New York.

Dated:        New York, New York
              March 20, 2023

                                    **Phillips and Associates, PLLC**
                                    *Attorneys for Plaintiff*


                            By: /s/ Jesse S. Weinstein, Esq.
                                Jesse S. Weinstein, Esq.
                                45 Broadway, Suite 430
                                New York, New York 10006
                                (212) 248-7431

2

# **EXHIBIT 1**

Silvia C. Stanciu, Esq.
NJ Attorney ID: 166552016
Phillips and Associates, PLLC
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sstanciu@tpglaws.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X   Case No.:   3:22-cv-07503
DOUGLAS DRIFT,

               Plaintiff,                          **COMPLAINT**

       -against-

DIAMOND MATERIALS, LLC,             Plaintiff Demands a
                                    Trial by Jury
               Defendant.
--------------------------------------------------------X

Plaintiff, Douglas Drift, by and through his attorneys, Phillips and Associates, PLLC, hereby

complains of Defendant DIAMOND MATERIALS, LLC, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C.

   §12101 *et seq.* ("ADA"), the New Jersey Law against Discrimination, N.J.S.A. 10:5-12, *et seq.*

   ("NJLAD") and the Jake Honig Compassionate Use Medical Cannabis Act, N.J.S.A. 24:6I-1,

   *et seq.* ("CUMCA"), seeking damages to redress the injuries he has suffered as a result of his

   employer's, or prospective employer's, discrimination on the basis of his actual or perceived

   disability, together with failure to provide a reasonable accommodation, failure to engage in

   the interactive process and/or cooperative dialogue, and failure to hire.

## JURISDICTION AND VENUE

2.  The Court has jurisdiction pursuant to 42 U.S.C. §12101, *et seq.*, 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3.  This action involves a Question of Federal Law.

4.  The Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5.  Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the District of New Jersey. 28 U.S.C. §1391(b).

6.  On or about September 21, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.  On or about September 28, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

8.  This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

9.  Plaintiff is a disabled resident of the State of New Jersey, County of Warren.

10. Plaintiff is a registrant with the New Jersey Cannabis Regulatory Commission.

11. At all times material, Defendant DIAMOND MATERIALS, LLC (hereinafter also referred to as "DIAMOND MATERIALS") was and is a foreign limited liability corporation existing under the laws of the State of Delaware.

12. At all times material, Defendant DIAMOND MATERIALS was and is authorized to conduct business in the State of New Jersey and does conduct business in the State of New Jersey.

2

13. At all times material, Defendant DIAMOND MATERIALS was and is a full service construction site contractor, which is headquartered at 242 North James Street, Ste 102, Newport, DE 19804.

14. At all times material, Plaintiff was a prospective employee of Defendant DIAMOND MATERIALS and was qualified for the position sought.

## **MATERIAL FACTS**

15. In or around 2020, Plaintiff was diagnosed with generalized anxiety disorder, which, at times, caused Plaintiff to experience a persistent sense of anxiety and panic.

16. In or around 2020, Plaintiff was prescribed medicinal marijuana, pursuant to the CUMCA, to manage the effects of his generalized anxiety disorder. Plaintiff used the medicinal marijuana as needed in the evening, but never during the day.

17. Up until February 2021, "Advanced Pavement Group ("APG")" was a contract construction company. From early 2020 through February 2021, Plaintiff worked at APG as a laborer.

18. However, in February 2021, due to the financial impact of the pandemic, APG ceased its operations and Defendant DIAMOND MATERIALS absorbed APG's remaining contracts.

19. After this transition, Plaintiff's former supervisor at APG, Todd Bigelow, became Defendant DIAMOND MATERIALS' Vice President and General Manager.

20. In or around the second week of February 2021, Mr. Bigelow emailed Plaintiff and instructed him to apply for a position with Defendant DIAMOND MATERIALS as a laborer.

21. Accordingly, on or about February 25, 2021, Plaintiff applied for a laborer position with Defendant DIAMOND MATERIALS, which would have required Plaintiff to work at various contracted job sites throughout the 2021 construction season.

22. This position also required general manual labor tasks, with a primary focus on asphalt paving, and required the use of shovels, rakes, and other small tools. The pay rate would have been $24 per hour, and Plaintiff was expected to work between 45 to 50 hours per week.

23. On or about March 11, 2021, Administrative Assistant, Penny Hildemann, e-mailed Plaintiff and asked whether he could go for a "drug and lift test" the following week.

24. Later that day, Plaintiff emailed Ms. Hildemann that he was available to go on Wednesday, March 17, 2021 or Thursday, March 18, 2021. Ms. Hildemann then scheduled the test for Wednesday, March 17, 2021 at 8:00AM.

25. On or about March 15, 2021, Plaintiff e-mailed Ms. Hildemann, "**I am prescribed medical marijuana. So I will not pass the drug test for the company. For THC. If this is a problem, please let me know.**"

26. The next day, Ms. Hildemann e-mailed Plaintiff, "**Unfortunately it's a problem only because the drug test is through the federal drug testing and not the state drug testing. Sorry.**"

27. That same day, Plaintiff replied to Ms. Hildemann's email, "So I would be taking the Department of Transportation drug test?" Ms. Hildemann replied, "**No you will not be hired. You will not pass either one according to Diamond Material standard drug testing.**" Ms. Hidemann presented this "lose-lose" scenario to Plaintiff because Defendant DIAMOND MATERIALS discriminates against medical marijuana users.

28. Later that day, Ms. Hildemann called Plaintiff, told him that there was a "misunderstanding," and instructed Plaintiff to appear for the test as scheduled.

29. In reality, Ms. Hildemann sought to cover up Defendant's discriminatory animus towards Plaintiff by sending him for the drug test, despite knowing that she was never going to hire him.

30. Nevertheless, on or about March 17, 2021, Plaintiff arrived at Defendant DIAMOND MATERIALS' location in South Plainfield, NJ and met with Safety Coordinator, Brian Smith.

31. Plaintiff told Mr. Smith about his reason for using medical marijuana, provided Mr. Smith with a copy of his medical marijuana registry identification card, and completed the onboarding paperwork. Mr. Smith told Plaintiff, "If you come up positive for any drugs other than THC, you will not be hired" and instructed Plaintiff to submit to the urinalysis at a nearby laboratory. Plaintiff complied.

32. On or about March 24, 2021, Mr. Smith called Plaintiff and told him that he tested positive for marijuana. Mr. Smith further stated that he needed to confirm with Defendant DIAMOND MATERIALS' legal counsel as to whether they could hire Plaintiff, that he would let Plaintiff know within a couple days, but that if he did not call Plaintiff, that meant he would not be hired.

33. Mr. Smith Never contacted Plainitff.

34. Defendant DIAMOND MATERIALS failed to hire Plaintiff due to his actual and/or perceived disability (generalized anxiety disorder), his use of medicinal marijuana for treatment of his disability, and/or for his status as a registrant with New Jersey Cannabis Regulatory Commission.

35. Defendant DIAMOND MATERIALS failed to hire Plaintiff because they perceived him as too disabled to complete his job duties and to avoid having to provide him with reasonable accommodations in the future.

36. As a result of Defendant DIAMOND MATERIALS's actions, Plaintiff felt humiliated, degraded, victimized, embarrassed, and emotionally distressed.

37. As a result of the Defendant DIAMOND MATERIALS's discriminatory and intolerable treatment of Plaintiff, he suffered severe emotional distress and physical ailments.

38. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

39. As Defendant DIAMOND MATERIALS's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendant DIAMOND MATERIALS.

**AS A FIRST CAUSE OF ACTION
UNDER THE ADA
<u>DISCRIMINATION</u>**

40. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

41. Plaintiff claims the DIAMOND MATERIALS violated Title I and V of the Americans with Disabilities Act of 1990 (Publ. L. 101-336) as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Sec. 12112 specifically states:

    a.  General Rule- No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42. DIAMOND MATERIALS violated the above and Plaintiff suffered numerous damages as a result.

43. Plaintiff hereby makes a claim against DIAMOND MATERIALS under all applicable paragraphs of 42 U.S.C. §12101 *et seq.*

**AS A SECOND CAUSE OF ACTION**
**UNDER THE ADA**
**RETALIATION**

44. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

45. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

    a. Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

46. DIAMOND MATERIALS violated Plaintiff's above rights as set forth herein.

**AS A THIRD CAUSE OF ACTION**
**UNDER THE NJLAD**
**DISCRIMINATION**

47. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

48. New Jersey's Law against Discrimination, N.J.S.A. 10:5-12, *et seq.*, sets forth in pertinent part as follows:

"It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  (a) For any employer, because of race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. 10:5-12(a).

49. Defendant DIAMOND MATERIALS engaged in an unlawful employment practice by discriminating against Plaintiff because of his actual and/or perceived disability and/or his status as a registrant with the New Jersey Cannabis Regulatory Commission, together with failure to engage in interactive process and/or cooperative dialogue, and/or failure to hire.

**AS A FOURTH CAUSE OF ACTION**
**UNDER THE NJLAD**
**<u>RETALIATION</u>**

50. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

51. New Jersey's Law against Discrimination, <u>N.J.S.A.</u> 10:5-12, *et seq.*, sets forth in pertinent part as follows:

> "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (d) For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act." <u>N.J.S.A.</u> 10:5-12(d).

52. Defendant DIAMOND MATERIALS engaged in an unlawful discriminatory practice by failing to hire and otherwise discriminating against the Plaintiff because he disclosed his disability, his status as a registrant with the New Jersey Cannabis Regulatory Commission, and his need for a reasonable accommodation.

**AS A FIFTH CAUSE OF ACTION**
**UNDER CUMCA**
**<u>DISCRIMINATION</u>**

53. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. New Jersey's Jake Honig Compassionate Use Medical Cannabis Act, <u>N.J.S.A.</u> 24:6I-1, *et seq.*, sets forth in pertinent part as follows: "It shall be unlawful to take any adverse employment action against an employee who is a registered qualifying patient based solely on the employee's status as a registrant with the [Cannabis Regulatory Commission]" <u>N.J.S.A.</u> 24:6I-6.1a.

55. New Jersey's Jake Honig Compassionate Use Medical Cannabis Act, <u>N.J.S.A.</u> 24:6I-1, *et seq.*, further sets forth in pertinent part as follows: "'Adverse employment action' means refusing to hire or employ an individual, barring or discharging an individual from employment, requiring an individual to retire from employment, or discriminating against an individual in compensation or in any terms, conditions, or privileges of employment." <u>N.J.S.A.</u> 24:6I-3.

56. Defendant DIAMOND MATERIALS engaged in an unlawful employment practice including, but not limited to, failing to hire Plaintiff because he disclosed his disability, his status as a registrant with the New Jersey Cannabis Regulatory Commission, and his need for a reasonable accomodation.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant DIAMOND MATERIALS:

A. Declaring that the Defendant DIAMOND MATERIALS engaged in unlawful discrimination and retaliation prohibited by the ADA, NJLAD and CUMCA and that Defendant DIAMOND MATERIALS unlawfully penalized Plaintiff, including by unlawfully failing to hire Plaintiff;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendant DIAMOND MATERIALS's unlawful discrimination, retaliation and unlawful failure to hire;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant DIAMOND MATERIALS's unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendant DIAMOND MATERIALS in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a jury trial as to all issues to be tried.

Dated: December 23, 2022
      New York, NY

**Phillips and Associates**
**Attorneys at Law, PLLC**
*Attorneys for Plaintiff*

By:   <u>*/s/ Silvia C. Stanciu, Esq.*</u>
      Silvia C. Stanciu, Esq.
      NJ Attorney ID: 166552016
      45 Broadway, Suite 430
      New York, NY 10006
      (212) 248-7431

# **EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Douglas Drift, | : Civil Action No. 3:22-cv-07503 |
| Plaintiff, | : |
| v. | : |
| Diamond Materials, LLC, | : |
| Defendant. | : |

## DEFENDANT, DIAMOND MATERIALS, LLC'S MOTION TO DISMISS PLAINTIFF, DOUGLAS DRIFT'S COMPLAINT, WITH PREJUDICE

**HYLAND LEVIN SHAPIRO LLP**
Megan Knowlton Balne / Attorney ID No. 021062010
Beau C. Wilson / Attorney ID No. 265042018
6000 Sagemore Drive, Suite 6301
Marlton, NJ  08053
Telephone: (856) 355-2900
balne@hylandlevin.com
wilson@hylandlevin.com
*Attorneys for Defendant, Diamond Materials, LLC*

Dated:  March 6, 2023

{H0323541.4}

# TABLE OF CONTENTS

**Preliminary Statement**................................................................................................5

**Procedural History And Statement Of Facts** ........................................................6

**Standard Of Review**..................................................................................................7

**Argument** ....................................................................................................................8

    **Point I**: Marijuana Use is Illegal under Federal Law.............................................8

    **Point II**: Plaintiff Cannot Establish That He Was "Qualified" For The Job Sought Due To His Use Of An Illegal Drug, And As Such, Cannot Establish A *Prima Facie* claim Under the ADA Against Diamond Materials .................................................................8

        A: Plaintiff Was Not Qualified For The Job He Sought .......................................9

    **Point III**: New Jersey Law Supports Diamond Materials' Position As CUMCA Does Not Create A Private Right Of Action And Affords Diamond Materials A Carve-Out Exception Ensuring It Will Not Lose Federal Funding And Plaintiff Is An "At-Will" Employee And Does Not Fall Within A Protected Class ............................................................10

        A: New Jersey State Law Did Not Create A Private Right of Action Under CUMCA And Even Went Further To Create A Carve-Out To Protect Entities That Receive Federal Funds Sought.............................................................................................................11

        B: Plaintiff's NJLAD Claims In Counts Three and Four Fail As A Matter Of Law Because Medical Marijuana Users Do Not Constitute A Protected Class ..................…. 12

    **Point IV**: A State Statute May Not Be Used To Circumvent Federal Law And Any Attempt To Do So Must Be Rejected Due To The Preemption Doctrine ...........................14

        A: The Controlled Substances Act....................................................................14

        B: The Drug-Free Workplace Act.......................................................................15

        C: The Occupational Health And Safety Act.....................................................16

**Conclusion** ................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

Anspach v. City of Philadelphia, 503 F.3d 256 (3d Cir. 2007) ...................................... 7

Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................................ 7, 8

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................... 7

Bernard v. IMI Sys., Inc., 131 N.J. 91 (1993) .............................................................. 13

Brandon Coats v. Dish Network, LLC, 350 P.3d 849 (Colo. 2015)............................... 14

Clowes v. Terminix Int'l, Inc., 109 N.J. 575 (1988)...................................................... 12

Deane v. Pocono Med. Ctr., 142 F.3d 138 (3d Cir. 1998) ............................................... 9

Elansari v. Ragazzo, No. 21-1192, 2021 WL 2069957 (3d Cir. May 24, 2021) .......................... 13

Eplee v. City of Lansing, 327 Mich. App. 635 (2019) ................................................... 13

Felder v. Casey, 487 U.S. 131 (1988) ........................................................................... 11

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) .............................................. 7

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) ............................................................ 12

Gonzales v. Raich, 545 U.S. 1 (2005)................................................................... 8, 14, 15

Hager v. M&K Const., 246 N.J. 1 (2021)................................................................... 8, 12

Lehenky v. Toshiba Am. Energy Sys. Corp., No. 20-4573, 2022 U.S. Dist. LEXIS 30344 (E.D.
    Pa. Feb. 22, 2022)...................................................................................................... 9

McCrone v. Acme Mkts., 561 F. App'x 169 (3d Cir. 2014) .......................................... 13

Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997) ................................ 7

Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325 (App. Div. 2021)..................... 13

R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255 (2001) ......................... 11

Salley v. Circuit City Stores, 160 F.3d 977 (3d Cir. 1998)............................................ 10

United States v. Johnson, 228 F. Supp. 3d 57 (D.D.C. 2017) ........................................ 9

United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483 (2001) ...................... 9

Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416 (App. Div. 2019) ....................... 12

Wild v. Carriage Funeral Holdings, Inc., 241 N.J. 285 (2020)...................................... 12

Zabilowicz v. Kelsey, 200 N.J. 507 (2009) ................................................................... 11

**Statutes**

29 U.S.C. § 651................................................................................................................. 16

41 U.S.C. § 8102............................................................................................................... 15

42 U.S.C. § 12101 ............................................................................................................ 8

42 U.S.C. § 12111 ............................................................................................................ 9

42 U.S.C. § 12114............................................................................................................ 9, 10

N.J. Stat. Ann. § 10:5-1.................................................................................................... 11

N.J. Stat. Ann. § 24:6I-2. ................................................................................................. 11

N.J. Stat. Ann. § 24:6I-6.1 ........................................................................................... 11, 16

**Other Authorities**

Clarification of OSHA's Position on Workplace Safety Incentive Programs and Post-Incident
    Drug Testing Under 29 C.F.R. § 1904.35(b)(1)(iv), United States Department of Labor,
    Occupational Safety and Health Administration (Oct. 11, 2018) .............................. 16

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................... 7

**Regulations**

29 C.F.R. § 1630.2 ............................................................................................... 9
29 C.F.R. § 1630.3 ............................................................................................. 10

Defendant, Diamond Materials, LLC ("Diamond Materials") hereby submits this brief in support of its Motion to Dismiss Plaintiff, Douglas Drift's ("Plaintiff") Complaint with prejudice (the "Motion").

## PRELIMINARY STATEMENT

Congress has identified "marihuana", commonly referred to as marijuana, as an illegal drug and classifies it as a Schedule I Drug.  This means that there are no permitted accepted medical uses and that the drug has a high potential for abuse.  Diamond Materials is a limited liability corporation formed in Delaware and conducts business throughout multiple states in the country.  Diamond Materials is a construction contractor that largely performs heavy highway and site development work for private businesses and government entities and receives private contracts as well as public contracts.

Plaintiff was not hired by Diamond Materials for an at-will position as a laborer after Diamond Materials became aware that Plaintiff tested positive for marijuana following a mandatory pre-employment drug screening.  Given the nature of Diamond Materials' business and specifically, its receipt, use and reliance upon funding from government entities and safety regulations for construction operations, the hiring and employment of individuals testing positive for illegal controlled substances would jeopardize Diamond Materials' public funding, public contract eligibility and Diamond Materials' compliance with federal workplace standards.

Plaintiff has not identified any law that would require him to be hired by Diamond Materials or even deem him qualified to be hired.  Further, applicable State law does not and cannot require employers such as Diamond Materials to choose between: (a) hiring someone who tests positive for marijuana whose employment would jeopardize public funding and federal regulatory compliance; or (b) facing unsubstantiated claims of discrimination for not hiring that individual.

In short, Diamond Materials' business operations and the applicable legal framework governing those operations left Diamond Materials with two options as it pertained to the hiring and employment of Plaintiff.  Option one, hire Plaintiff to avoid any appearance of discrimination, despite the fact that Plaintiff is deemed unqualified for the position due to his illegal drug use, and put Diamond Materials' critical public funding, contract eligibility and federal regulatory compliance at significant risk; or, option two, refuse to hire the Plaintiff and face unsubstantiated claims of discrimination.  No law, New Jersey or Federal, requires an employer such as Diamond Materials to be forced into this type of "lose-lose" scenario.

Pursuant to the risks faced by Diamond Materials if it hired the Plaintiff, Diamond Materials validly determined that it could not hire the Plaintiff.  The decision not to hire Plaintiff was, therefore, permissible by law, and required under federal law to protect the business interests and survival of Diamond Materials and not for any discriminatory or unlawful purpose.

Therefore, the Motion should be granted in its entirety.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

Diamond Materials is a construction company, incorporated in Delaware and authorized to conduct business in multiple states.  (Dkt. 1, ¶¶ 11-13).  On or around February 25, 2021, Plaintiff applied for a position with Diamond Materials.  (Dkt. 1, ¶ 21).  Approximately two weeks later, an employee for Diamond Materials emailed Plaintiff to schedule a drug test, which was scheduled for March 17, 2021.  (Dkt. 1, ¶¶ 23-24).  Thereafter, Plaintiff emailed the employee for Diamond Materials, informing her that he was "prescribed marijuana" and that he "will not pass the drug test for the company."  (Dkt. 1, ¶ 25).  The employee for Diamond Materials responded, saying that it would be "a problem only because the drug test is through the federal drug testing".  (Dkt.

---

[1] The allegations in Plaintiff's Complaint are accepted as true solely for purposes of this Motion, pursuant to Fed. R. Civ. P. 12(b)(6).

1, ¶ 27). On or about March 17, 2021, Plaintiff submitted a sample to a urinalysis lab. (Dkt. 1, ¶ 31). Thereafter, on March 24, 2021, another employee for Diamond Materials called Plaintiff to inform him the test returned positive for marijuana. (Dkt. 1, ¶ 32). The same employee told Plaintiff "that if he did not call [back] Plaintiff, that meant [Plaintiff] would not be hired." (Dkt. 1, ¶ 32).

Several months later, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, received a right to sue letter and thereafter brought this action. (Dkt. 1, ¶¶ 6-8).

## STANDARD OF REVIEW

Diamond Materials seeks dismissal because Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a reviewing court must accept the plaintiff's factual allegations as true. However, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see also Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007) (quoting Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)) (conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent dismissal).

The court must determine whether the facts alleged in the complaint are "sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). "A complaint has to show such an entitlement

with its facts." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal quotations omitted).

## ARGUMENT

### POINT I

**MARIJUANA USE IS ILLEGAL UNDER FEDERAL LAW.**

Marijuana is illegal under federal law. See Hager v. M&K Const., 246 N.J. 1 (2021) ("Marijuana remains a Schedule I drug today.").  Specifically, the Controlled Substances Act ("CSA"), prohibits the use of marijuana and classifies it as a Schedule I drug.  21 U.S.C. § 812. Because federal law prohibits the use of marijuana, even for medical purposes, it is a violation of Federal law to use marijuana, even in cases where a state law allows medical marijuana use.  See Gonzales v. Raich, 545 U.S. 1, 29 (2005).  This is the guiding principle for the remainder of the moving papers below.  Because Plaintiff readily admits that he uses marijuana, which is an illegal Schedule I drug, any argument that Plaintiff was permitted to use marijuana is preempted by federal law, which prohibits the use of marijuana.

### POINT II

**PLAINTIFF CANNOT ESTABLISH THAT HE WAS "QUALIFIED" FOR THE JOB SOUGHT DUE TO HIS USE OF AN ILLEGAL DRUG, AND AS SUCH, CANNOT ESTABLISH A PRIMA FACIE CLAIM UNDER THE ADA AGAINST DIAMOND MATERIALS.**

Plaintiff's use of marijuana prevents him from being able to state a *prima facie* case of discrimination against Diamond Materials under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") because Plaintiff does not meet the ADA's definition of being "qualified" for the particular job.  Moreover, his own pleadings evidence that Diamond Materials' decision to not hire him was based solely upon a positive drug test for marijuana.  As a result, Counts One and Two of the Complaint (Dkt. 1, p. 6-7) involving alleged discrimination and retaliation under the

ADA must be dismissed as a matter of law.

### A. Plaintiff Was Not Qualified For The Job He Sought.

To demonstrate a *prima facie* case of disability discrimination, a plaintiff must establish all three of the following requirements: (1) that he is "disabled" within the meaning of the ADA; (2) that he is qualified for the particular job; and (3) that he has suffered an adverse employment action because of the disability. Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998).[2] The ADA states that a "qualified individual with a disability" does not include "any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). A covered entity includes "an employer," such as Diamond Materials. 42 U.S.C. § 12111(2).

The fact that Plaintiff is prescribed medical marijuana is of no moment as the CSA prevents marijuana from being validly prescribed. See United States v. Johnson, 228 F. Supp. 3d 57, 62 (D.D.C. 2017) (citing United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001)). As a result, Plaintiff cannot make the second factor, that he is qualified for the particular job, and thus cannot establish a *prima facie* case of discrimination.

A factually similar matter recently arose in the Third Circuit. Lehenky v. Toshiba Am. Energy Sys. Corp., No. 20-4573, 2022 U.S. Dist. LEXIS 30344 (E.D. Pa. Feb. 22, 2022). In Lehenky, a former employee filed suit against her former employer for termination after a drug test showed the presence of marijuana metabolites in her system. Id. at *1. The plaintiff suffered from Panniculitis and received an "over-the-counter" product that contained marijuana metabolites to treat that disease. Id. at *1-2. The Court rejected the plaintiff's arguments for several reasons,

---

[2] For purposes of this Motion, Diamond Materials does not seek to challenge whether the Plaintiff is "disabled" within the meaning of the ADA. Diamond Materials expressly reserves the right, should the Motion be denied, to challenge this position and whether Plaintiff's alleged disability "substantially limited" or significantly restricted the performance of a major life activity. See 29 C.F.R. § 1630.2(j).

but relevant to the present matter, because plaintiff's use of a product with marijuana metabolites "preclud[ed] Plaintiff from being deemed 'qualified.'" Id. at *8 (citing 42 U.S.C. § 12114(a)).  As a result, the Court dismissed the case, with prejudice as "any attempt to amend would be futile." Id. at *18.

Here, Diamond Materials, a covered entity, properly conducted a drug test prior to employing Plaintiff (42 U.S.C. § 12114(d)) and determined that the Plaintiff was not eligible to be hired as a result of his positive drug test.  Plaintiff cannot meet the crucial second prong required to establish that he was "qualified" for the position he sought.  Further, Plaintiff cannot argue that he was not "currently engaging" in the illegal drug as he readily admits to using the marijuana "as needed in the evening."  (ECF Dkt. 1, ¶ 16).  The Third Circuit has interpreted that term "currently engaging" to be broader than "the use of drugs on the day, or within a matter of days or weeks before . . . [r]ather, 'the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct.'" Salley v. Circuit City Stores, 160 F.3d 977, 980 n.2 (3d Cir. 1998) (citing 29 C.F.R. § 1630.3)).

Therefore, Plaintiff cannot establish a *prima facie* case of discrimination or retaliation under the ADA and, as a matter of law, the first two counts of the Complaint must be dismissed with prejudice as any amendment would be futile.

### POINT III

**NEW JERSEY LAW SUPPORTS DIAMOND MATERIALS' POSITION AS CUMCA DOES NOT CREATE A PRIVATE RIGHT OF ACTION AND AFFORDS DIAMOND MATERIALS A CARVE-OUT EXCEPTION ENSURING IT WILL NOT LOSE FEDERAL FUNDING AND PLAINTIFF IS AN "AT-WILL" EMPLOYEE AND DOES NOT FALL WITHIN A PROTECTED CLASS.**

Should the Court determine not to immediately remand this matter to New Jersey State Court following the dismissal of Plaintiff's ADA claims, the Court should exercise supplemental jurisdiction over the pendent state law claims and dismiss the remaining three Counts against

Diamond Materials.  See Felder v. Casey, 487 U.S. 131, 151 (1988) (a federal court may apply supplemental jurisdiction over pendent state law claims and will apply the substantive state law of the forum state).   These Counts should be dismissed because New Jersey's Jake Honig Compassionate Use Medical Cannabis Act, N.J. Stat. Ann. § 24:6I-2, et seq. ("CUMCA") does not create a private right of action and it even provides a carve-out exemption for contractors who receive federal funding.  Further, the Third and Fourth Counts should also be dismissed because Plaintiff is not part of a protected class, which is required under any New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 ("NJLAD" or "LAD") claim.

Therefore, Plaintiff's remaining state law claims should be dismissed with prejudice.

### A. New Jersey State Law Did Not Create A Private Right of Action Under CUMCA And Even Went Further To Create A Carve-Out To Protect Entities That Receive Federal Funds

It is clear as a matter of law that CUMCA does not create a private right of action to permit Plaintiff to bring a direct claim against Diamond Materials.  Consequently, the Fifth Count of Plaintiff's Complaint must be dismissed with prejudice.

The legislature is presumed to know how to draft language.  See Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009) ("The Legislature knows how to draft a statute to achieve that result when it wishes to do so.").  The plain text of the statute evidences there is no private right of action and Plaintiff fails to identify any language that would suggest otherwise.  Further, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action."  R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001).  In fact, the plain language of the CUMCA statute provides an expressed carve-out for employers, such as Diamond Materials, who receive federal funding for their construction provides.  Specifically, N.J. Stat. Ann. § 24:6I-6.1(c)(2) states that "[n]othing in this section shall be deemed to require an employer to commit any act that would cause the employer to

be in violation of federal law, that would result in a loss of a licensing-related benefit pursuant to federal law, or that would result in the loss of a federal contract or federal funding. CUMCA "does not alter preexisting employment rights and obligations" (Hager v. M&K Const., 246 N.J. 1 (2021)) in and of itself, and thus cannot afford a private right of action to Plaintiff. Further, CUMCA exempts Diamond Materials from being forced to commit an act, such as hiring Plaintiff, that would cause it to be in violation of federal law or result in a loss of federal contracts or federal funding.

In fact, the New Jersey Appellate Division held that the CUMCA did not "create a private cause of action against an employer for wrongful discharge." Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416, 428 n.3 (App. Div. 2019), aff'd, 241 N.J. 285 (2020). The New Jersey Supreme Court upheld the Appellate Division's published opinion in Wild with the slight caveat that provisions of the CUMCA "may affect a LAD discrimination . . . claim in certain settings." Wild, 241 N.J. at 288. The Court went on, stating that allegations involving CUMCA could inform the "circumstances surrounding a LAD disability discrimination claim" but that limited the movant to "that [LAD] claim." Id. at 288-89.

Therefore, the Fifth Count of Plaintiff's Complaint must be dismissed, with prejudice as a matter of law.

**B. Plaintiff's NJLAD Claims In Counts Three and Four Fail As A Matter Of Law Because Medical Marijuana Users Do Not Constitute A Protected Class**

To properly plead a case of discrimination, specifically a failure to hire, under the NJ LAD, a plaintiff must show that he (1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). As stated above, Plaintiff

cannot properly plead the "qualification" prong as a result of his use of illegal drugs.  Moreover, under the NJLAD, Plaintiff cannot show that he belongs to a protected class.

The Third Circuit has held that, "New Jersey is a presumptively 'at-will' employment state." McCrone v. Acme Mkts., 561 F. App'x 169, 172 (3d Cir. 2014) (citing Bernard v. IMI Sys., Inc., 131 N.J. 91 (1993).  "In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine . . . [i]ndeed, absent an employment agreement 'providing otherwise' an employer may 'terminat[e] the employment of at-will employees for cause or for no cause.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 339 (App. Div. 2021).

A recent Michigan Court of Appeals properly and persuasively analyzed the employment-at-will doctrine under the lens of a patient using medical marijuana.  Eplee v. City of Lansing, 327 Mich. App. 635, 655 (2019).   The Eplee Court explained that the legal right to use medical marijuana under state law does not override an employer's right to decide whether or not to hire a potential employee or to fire an "at-will" employee.  Ibid.  The court held for the employer, explaining that rescinding a job offer that was conditioned on a negative drug test did not violate the prospective employee's legal rights.  Ibid.  In fact, the court reasoned that since the employer would have been able to terminate the employee's employment at any time after their employment began for any reason or no reason at all, "it logically follows" that the employer could rescind its conditional offer of employment at any time and for any or no reason at all.  Ibid.  Finally, the court explained that the medical use of marijuana does not create a "protected class" for users: "[t]he statute does not provide an independent *right* protecting the medical use of marijuana in all circumstances, nor does it create a protected class for users of medical marijuana." Id. at 657; see also Elansari v. Ragazzo, No. 21-1192, 2021 WL 2069957 (3d Cir. May 24, 2021) (holding that medical marijuana users are not members of a protected class).

Here, Diamond Materials was within its legal rights when choosing to rescind employment for an at-will prospective employee. New Jersey courts explicitly utilize the employment-at-will doctrine. While not binding, the persuasive reasoning in <u>Eplee</u> evidences that "it logically follows" from the employment-at-will doctrine that an employer could rescind its conditional offer of employment at any time and for any or no reason at all, just as they could terminate employment for any hired employee at any time and for any or no reason at all. Importantly, as the court in <u>Eplee</u> noted, medical marijuana users are not a "protected class" on the basis of being state-authorized to use medical marijuana and have no independent legal right to be employed because of such use, especially when there are severe penalties on the table for the employer. Accordingly, Diamond Materials acted in accordance with state and federal law when refusing to hire Plaintiff employee on the basis of their use of an illegal drug.

## POINT IV

**A STATE STATUTE MAY NOT BE USED TO CIRCUMVENT FEDERAL LAW AND ANY ATTEMPT TO DO SO MUST BE REJECTED DUE TO THE PREEMPTION DOCTRINE.**

Importantly, there are a multitude of federal laws that prohibit the use of marijuana and either prohibit or highly penalize an employer, such as Diamond Materials, from hiring an individual who is using an illegal drug under federal law. The NJLAD, a state statute, cannot be used as a means to thwart or circumvent federal law. <u>See</u> <u>Gonzales v. Raich</u>, 545 U.S. 1, 29 (2005).

### A. The Controlled Substances Act

As detailed above, the CSA classifies marijuana as a Schedule I drug. A recent decision by Colorado's State Supreme Court is illustrative for the present matter and discusses the interplay between the CSA and any allegedly conflicting state laws. <u>Brandon Coats v. Dish Network, LLC</u>, 350 P.3d 849 (Colo. 2015).

In <u>Coats</u>, an employee was discharged due to his state-licensed use of medical marijuana

at home during non-work hours.  Id. at 850.  The employer required its employee to take drug test and the employee tested positive for marijuana.  Id. at 850-51.  The employee was upfront with his employer, informing his employer that he was disabled and a registered medical marijuana patient. Id. at 850.  Despite this, the employee was fired by his employer.  Id. at 851.  The employee, relying upon Colorado's Medical Marijuana Amendment to its State Constitution (Colo. Const. art. XVIII, § 14) sued his employer, arguing that he should not have been fired because he was permitted to engage in "lawful activities" during nonwork hours.  Id. at 851.

The Colorado Supreme Court rejected the employee's argument, and held that the CSA prohibits marijuana use and that there was "no exception for marijuana use for medicinal purposes or for marijuana use conducted in accordance with state law."  Id. at 852.  Further, the Court cited the United State Supreme Court, holding that "'[t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail,' including in the area of marijuana regulation."  Ibid. (citing Gonzales, 545 U.S. at 29.  Because the CSA prohibits any use of marijuana, an employer could discharge its employee for their unlawful activities without fear of allegations such as wrongful termination.

Here, Diamond Materials' case is even stronger than the employer in Coats.  Not only would the CSA preempt any conflicting state statute, but the CSA also provides Diamond Materials with the authority to discharge or choose to not hire an employee who violates the CSA. As a result, Plaintiff's attempts to bypass federal law through its claims under the NJLAD should be rejected and Diamond Materials' motion should be granted in full.

**B.  The Drug-Free Workplace Act.**

According to the Drug-Free Workplace Act ("DFW Act"), federal contractors are required to make a "good faith effort" to comply with the DFW Act.  See 41 U.S.C. § 8102.  The DFW Act specifies that "[p]ayment under a contract awarded by a Federal agency may be suspended and the

contract may be terminated, and the contractor or individual who made the contract with the agency may be suspended or debarred in accordance with the requirements of this section, if the head of the agency determines that . . . [there has been a failure to maintain a drug-free workplace per the DFW Act]." Id. Once Diamond Materials became aware that Plaintiff tested positive for marijuana, Diamond Materials lawfully refused to hire Plaintiff, because the alternative would mean that Diamond Materials could face serious penalties, such as suspension or termination of its federally funded contracts and prohibition from applying for future government funding. As such, Diamond Materials, in accordance with the DFW Act and state law (see N.J. Stat. Ann. § 24:6I-6.1(c)(2)), appropriately refused employment to a potential employee who tested positive for marijuana.

### C. Occupational Health And Safety Act.

The Occupational Safety and Health Act ("OSHA") also regulates employee use of marijuana. See 29 U.S.C. § 651 *et seq.* OSHA requires that employers remain in compliance with federal protective safety and health standards in order to provide a safe workplace for employees. Per OSHA's General Duty Clause (29 U.S.C. § 654), employers must keep their workplaces free of "recognized hazards that are causing or are likely to cause death or serious physical harm" to their employees. Additionally, OSHA has issued memorandum permitting drug testing and adverse employment actions after accidents occur on the worksite. See Clarification of OSHA's Position on Workplace Safety Incentive Programs and Post-Incident Drug Testing Under 29 C.F.R. § 1904.35(b)(1)(iv), United States Department of Labor, Occupational Safety and Health Administration (Oct. 11, 2018) (Permitting employers to "conduct" and make decisions based upon "post-incident drug testing" if it is done "to promote workplace safety and health.").

The Court should not ignore the reality that Plaintiff was applying to work on a construction site. An employee who uses an illegal Schedule I substance may present serious issues and

concerns for employee health and safety. Plaintiff was refused a safety-sensitive position as a general construction laborer who would have been on construction sites with heavy equipment and machinery. While Diamond Materials actively attempts to prevent all work-place accidents, they do sometimes occur, and had one occurred, Plaintiff would have been subject to a "post-incident drug test", which would have resulted in a positive test for a Schedule I drug. Accordingly, Diamond Materials properly refused to hire Plaintiff in order to keep its employees safe and to comply with federal law.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that Defendant's Motion to Dismiss be granted in its entirety.

Respectfully submitted,

HYLAND LEVIN SHAPIRO LLP

By: _____

Megan Knowlton Balne, Esquire
Attorney for Defendant,
Diamond Materials LLC

Dated: March 6, 2023

# **<u>EXHIBIT 3</u>**

**From:** Douglas Drift <driftdouglas1992@icloud.com>
**Date:** March 16, 2021 at 8:10:01 AM EDT
**To:** Penny Hildemann <phildemann@diamondmaterials.com>
**Subject: Re: Drug and Lift Test**

Ok thank you

Sent from my iPhone

> On Mar 16, 2021, at 8:08 AM, Penny Hildemann <phildemann@diamondmaterials.com> wrote:
>
> No you will not be hired. You will not pass either one according to Diamond Material standard drug testing.
>
> **From:** Douglas Drift <driftdouglas1992@icloud.com>
> **Sent:** Tuesday, March 16, 2021 8:06 AM
> **To:** Penny Hildemann <phildemann@diamondmaterials.com>
> **Subject:** Re: Drug and Lift Test
>
> So I would be taking the dot drug test ?
>
> Sent from my iPhone

On Mar 16, 2021, at 7:41 AM, Penny Hildemann
<phildemann@diamondmaterials.com> wrote:

Hi Doug,

Unfortunately it's a problem only because the drug test is through the
federal drug testing and not the state drug testing. Sorry

Thank you.

**From:** Douglas Drift <driftdouglas1992@icloud.com>
**Sent:** Monday, March 15, 2021 8:37 PM
**To:** Penny Hildemann <phildemann@diamondmaterials.com>
**Subject:** Re: Drug and Lift Test

Hi penny. This is Douglas drift  I'm reaching out to you because I don't
want to waste anyone's time. I am prescribed medical marijuana. So I
will not pass the drug test for the company.  For thc. If this is a problem
please let me know. Thank you and feel free to call me with any
questions 9086163253

Sent from my iPhone

On Mar 12, 2021, at 3:01 PM, Penny Hildemann
<phildemann@diamondmaterials.com> wrote:

Thank you see Wednesday.

**From:** Douglas Drift <driftdouglas1992@icloud.com>
**Sent:** Friday, March 12, 2021 3:00 PM
**To:** Penny Hildemann
<phildemann@diamondmaterials.com>
**Subject:** Re: Drug and Lift Test

Yes that is good

Sent from my iPhone

On Mar 12, 2021, at 10:31 AM, Penny
Hildemann

<phildemann@diamondmaterials.com>
wrote:

Hi Doug,

Wednesday 3/17/20 at 8AM here at office.

Let me know if this works for you.

**From:** Douglas Drift
<driftdouglas1992@icloud.com>
**Sent:** Thursday, March 11, 2021 9:26 AM
**To:** Penny Hildemann
<phildemann@diamondmaterials.com>
**Subject:** Re: Drug and Lift Test

Yes Wednesday or Thursday is good for me

Sent from my iPhone

On Mar 11, 2021, at 7:44 AM, Penny Hildemann <phildemann@diamondmaterials.com> wrote:

Hi Doug,

Can you go next week for a drug and lift test for Diamond. Give me a day that is good for you. I am trying to get a few guys to go together.

Thanks

*Penny Hiledmann*

*Adminstrative Assistant*

***Diamond Materials LLC***

1501 Jersey St.
South Plainfield, NJ 07080
O: (908) 548-8239
Delaware Main Office:  (302) 658-6524
phildemann@diamondmaterials.com

http://www.diamondmaterials.com