**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Douglas Drift,<br><br>    Plaintiff,<br><br>  v.<br><br>Diamond Materials, LLC,<br><br>    Defendant. | Civil Action No. 3:22-cv-07503 |

**REPLY BRIEF IN SUPPORT OF DEFENDANT, DIAMOND MATERIALS, LLC'S MOTION TO DISMISS PLAINTIFF, DOUGLAS DRIFT'S COMPLAINT, WITH PREJUDICE**

**HYLAND LEVIN SHAPIRO LLP**
Megan Knowlton Balne, Esquire
Attorney ID No. 021062010
Beau C. Wilson, Esquire
Attorney ID No. 265042018
6000 Sagemore Drive, Suite 6301
Marlton, NJ  08053
Telephone: (856) 355-2900
balne@hylandlevin.com
wilson@hylandlevin.com
*Attorneys for Defendant, Diamond Materials, LLC*

Dated:  March 27, 2023

**TABLE OF CONTENTS**

I.  ARGUMENT ..................................................................................................................... 1

   A.  IT IS UNDISPUTED THAT MARIJUANA USE IS ILLEGAL UNDER FEDERAL LAW. .................................................................................................................................. 1

   B.  PLAINTIFF WAS NOT "QUALIFIED" FOR THE JOB SOUGHT DUE TO HIS "CURRENT" USE OF AN ILLEGAL SCHEDULE I DRUG, AND CASE LAW ESTABLISHES THAT A PRESCRIPTION FROM A STATE-LICENSED PROFESSIONAL CANNOT CIRCUMVENT FEDERAL LAW. ........................................................................ 1

      i.  Federally Prohibited Drug Use Does Not Fall Within The ADA's "Supervised Use" Exception. .................................................................................................................... 2

      ii.  The ADA Does Not Permit The Use Of A Schedule I Drug At Any Time, And Plaintiff's Pleadings Confirm He Was Still "Currently Engaging" In Marijuana Use At The Time Of His Application To Diamond Materials. ................................................... 4

   C.  CUMCA DOES NOT CREATE A PRIVATE RIGHT OF ACTION. ............................... 5

   D.  PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER THE NJLAD BECAUSE HE IS AN AT-WILL EMPLOYEE AND DOES NOT BELONG TO A PROTECTED CLASS… 7

      i.  Medical Marijuana Users Are Not A Protected Class Under The NJLAD ...................... 8

      ii.  Diamond Materials' Exemption Under CUMCA As An Employer That Receives Federal Funding Through Federal Contracts Also Nullifies His NJLAD Claims Against Diamond Materials. .......................................................................................................... 9

II.  CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

Bernard v. IMI Sys., Inc., 131 N.J. 91 (1993) ................................................................................. 8

Clowes v. Terminix Int'l Inc., 109 N.J. 575, 596 (1988) ................................................................. 8

Cotto v. Ardagh Glass Packing, Inc., No. 18-1037 (RBK/AMD), 2018 U.S. Dist. LEXIS 135194 (D.N.J. Aug. 10, 2018) ................................................................................................................. 9

Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952) ...................................................... 6

DiProspero v. Penn, 183 N.J. 477, 492 (2005) ........................................................................... 5, 6

Elansari v. Ragazzo, 857 F. App'x 54, 56 (3d Cir. 2021) cert. denied, 142 S. Ct. 463 .................. 8

Eplee v. City of Lansign, 327 Mich. App. 635, 655-57 (2019) ...................................................... 8

Figueroa v. Fajardo, 1 F. Supp. 2d 117, 120 (D.P.R. 1998) .......................................................... 4

Frugis v. Bracigliano, 177 N.J. 250, 280 (2003) ........................................................................... 5

Gonzales v. Raich, 545 U.S. 1, 29 (2005) ...................................................................................... 1

Hager v. M&K Const., 246 N.J. 1 (2021) ...................................................................................... 1

J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 143-44 (2001) .................. 10

James v. City of Costa Mesa, 700 F.3d 394, 397 (9th Cir. 2012) cert. denied, 569 U.S. 994 (2013) ........................................................................................................................................ 2, 3

Lehenky v. Toshiba Am. Energy Sys. Corp., No. 20-4573, 2022 U.S. Dist. LEXIS 30344 (E.D. Pa. Feb. 22, 2022) ........................................................................................................................ 3

Mason v. City of Hoboken, 196 N.J. 51, 68 (2008) ....................................................................... 6

McCrone v. Acme Mkts., 561 F. App'x 169, 172 (3d Cir. 2014) ................................................... 8

Morton v. Mancari, 417 U.S. 535, 551 (1974) ............................................................................ 10

Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 339 (App. Div. 2021) .............................. 8

O'Connell v. State, 171 N.J. 484, 488 (2002) ................................................................................ 6

R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001) .................. 7

Salley v. Circuit City Stores, 160 F.3d 977, 980 n.2 (3d Cir. 1998) .............................................. 4

United States v. Johnson, 228 F. Supp. 3d 57, 62 (D.D.C. 2017) .................................................. 3

United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001) ............................. 3

Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416, 428 n.3 (App. Div. 2019), aff'd. 241 N.J. 285 (2020) ..................................................................................................................... 6

Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009) .................................................................. 5

**Statutes**

21 U.S.C. § 812(b)(1)(B) ....................................................................................................... 4

29 U.S.C. §§ 651 .................................................................................................................... 9

41 U.S.C. §§ 701 .................................................................................................................... 9

42 U.S.C. § 12101 .................................................................................................................. 1

42 U.S.C. § 12111(6)(A) ........................................................................................................ 2

42 U.S.C. § 12114(a) ........................................................................................................ 2, 3

42 U.S.C. § 12188 .................................................................................................................. 7

42 U.S.C. §§ 3602(i) .............................................................................................................. 7

N.J. Stat. Ann. § 10:5-1 ......................................................................................................... 7

N.J. Stat. Ann. § 24:6I-2. ....................................................................................................... 5

N.J. Stat. Ann. § 24:6I-32a .................................................................................................... 7

N.J. Stat. Ann. § 24:6I-6.1(c)(2) ............................................................................................ 9

N.J. Stat. Ann. § 24:6I-6.1c(1) .............................................................................................. 4

N.J. Stat. Ann. 10:6-2. ........................................................................................................... 7

N.J. Stat. Ann. 56:8-19. ......................................................................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 5, 9

**Regulations**

29 C.F.R. § 1630.3 ................................................................................................................. 4

Defendant, Diamond Materials, LLC ("Diamond Materials") hereby submits this reply brief in support of its Motion to Dismiss Plaintiff, Douglas Drift's ("Plaintiff") Complaint with prejudice (the "Motion"). Diamond Materials, as a multi-state contractor that receives federal funds for major construction projects, cannot be forced to employ a person in a safety-sensitive positions who is also a current user of a Schedule I drug.

It is respectfully requested that the Motion should be granted in its entirety.

## I. ARGUMENT

### A. IT IS UNDISPUTED THAT MARIJUANA USE IS ILLEGAL UNDER FEDERAL LAW.

Plaintiff does not and cannot challenge the undisputable conclusion that marijuana is illegal under federal law. See Hager v. M&K Const., 246 N.J. 1 (2021) ("Marijuana remains a Schedule I drug today."). Specifically, the Controlled Substances Act ("CSA"), prohibits the use of marijuana and classifies it as a Schedule I drug. 21 U.S.C. § 812. As a Schedule I drug, under federal law marijuana has no accepted medical use and therefore, it is a violation of federal law to use marijuana even in cases where a state law allows medical marijuana use. See Gonzales v. Raich, 545 U.S. 1, 29 (2005). Plaintiff readily admits that he used and continues to use an illegal Schedule I drug. (Dkt. 1 ¶¶ 16, 25, 31, 32, and 34).

### B. PLAINTIFF WAS NOT "QUALIFIED" FOR THE JOB SOUGHT DUE TO HIS "CURRENT" USE OF AN ILLEGAL SCHEDULE I DRUG, AND CASE LAW ESTABLISHES THAT A PRESCRIPTION FROM A STATE-LICENSED PROFESSIONAL CANNOT CIRCUMVENT FEDERAL LAW.

As detailed more fully in Diamond Materials' moving papers (Dkt. 3-1), Plaintiff's use of marijuana prevents him from being able to state a *prima facie* case of discrimination against Diamond Materials under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") because Plaintiff does not meet the ADA's definition of being "qualified" for the particular job. Plaintiff incorrectly asserts that he should be considered exempt from this prohibition for two

reasons: the first is Plaintiff's claim that he used the Schedule I drug "under the supervision of licensed professionals" and his second is that "the ADA was never intended to regulate drug use *outside the workplace*." (Dkt. 5, p. 5).  These arguments have been made in prior cases and have been soundly rejected.  As a result, Counts One and Two of the Complaint involving alleged discrimination and retaliation under the ADA must be dismissed as a matter of law.

> i. **Federally Prohibited Drug Use Does Not Fall Within The ADA's "Supervised Use" Exception.**

Plaintiff argues that because he was prescribed medical marijuana from a New Jersey State physician, he falls under the "supervised use" exception.  Plaintiff conveniently omits the ADA's express reference to "authorized" uses under the Controlled Substance Act and therefore, Plaintiff's argument should be rejected.  42 U.S.C. § 12111(6)(A).

The ADA provides that a "qualified individual with a disability" cannot include "any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a).  Moreover, "Congress has made clear, however, that the ADA defines 'illegal drug use' by reference to federal, rather than state, law, and federal law does not authorize the plaintiffs' medical marijuana use." James v. City of Costa Mesa, 700 F.3d 394, 397 (9th Cir. 2012) cert. denied, 569 U.S. 994 (2013).  As a result, medical marijuana use is not protected by the ADA.

James is directly on point.  In James, the plaintiffs were indisputably disabled California residents who received approval from licensed medical doctors to use marijuana to treat their pain. Id. at 396.  The Ninth Circuit carefully reviewed the language and history of the ADA and examined what Congress intended when it provided an exemption from the illegal drug exclusion for drugs taken under the supervision of a licensed health care professional.  Id. 398-400. Importantly, the ADA mentioned the CSA multiple times, which led the Court to find that Federal, rather than State law applied to determining what the illegal use of drugs should mean and what

exemptions, if any, should apply.  Id. at 399.  The Ninth Circuit "f[ou]nd nothing in the legislative history to suggest that Congress intended to extend ADA protection to state-authorized, but federally prohibited uses of marijuana falling outside this regulatory framework.  There is not one word in the statute or in the legislative history suggesting that Congress sought to exclude from the definition of illegal drug use the use of a controlled substance that was lawful under state law but unlawful and unauthorized under federal law."  Id. at 402.  The Court held "that federally prohibited medical marijuana use does not fall within § 12210(d)(1)'s supervised use exception." Id. at 404; see id. at 403 n.10 ("The CSA directly addresses whether medical marijuana use constitutes illegal use of drugs, and clearly states that such use is unlawful."); see also United States v. Johnson, 228 F. Supp. 3d 57, 62 (D.D.C. 2017) (citing United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001)) (the CSA prevents marijuana from being validly prescribed.).

Like James, this Court should also find that, even taking Plaintiff's allegations as true that at the time of the adverse employment action, Plaintiff held a valid, up-to-date prescription for medical marijuana from a state-licensed physician (Dkt. 1 ¶ 16), Plaintiff's claims still fail as a matter of law.  Plaintiff's use of a Schedule I drug automatically disqualifies him from establishing a *prima facie* case of disability discrimination under the ADA because he cannot establish the crucial second prong, that he is qualified for the particular job.  42 U.S.C. § 12114(a); see Lehenky v. Toshiba Am. Energy Sys. Corp., No. 20-4573, 2022 U.S. Dist. LEXIS 30344, *8 (E.D. Pa. Feb. 22, 2022) (plaintiff's use of a product with marijuana metabolites "preclud[ed] Plaintiff from being deemed 'qualified.'" (citing 42 U.S.C. § 12114(a)).  A state-licensed physician cannot circumvent federal law by prescribing a Schedule I drug pursuant to state law.

As such, the Court should reject the Plaintiff's argument that he is exempt and it should grant Diamond Materials' Motion and dismiss Counts I and II of Plaintiff's Complaint.

      **ii.    The ADA Does Not Permit The Use Of A Schedule I Drug At Any Time, And Plaintiff's Pleadings Confirm He Was Still "Currently Engaging" In Marijuana Use At The Time Of His Application To Diamond Materials.**

The second argument Plaintiff makes in his attempt to circumvent the ADA's express language is that he only used marijuana "outside the workplace." (Dkt. 5, p. 5). However, this is a complete red herring.[1] As described throughout the pleadings, Plaintiff asserts that he only uses "medicinal marijuana as needed in the evening, but never during the day." (Dkt. 1 ¶ 16); see (Dkt. 5, p. 5) (referencing Plaintiff's "off-duty marijuana use"). However, Plaintiff's proposed distinction is unfounded under the ADA. The ADA does not distinguish between on-duty or off-duty marijuana use, only whether an individual is "currently engaging in the use of the illegal drug." 42 U.S.C. 12112(a).

The Third Circuit, as well as the cases detailed below, have consistently interpreted "currently engaging" to be broader than "the use of drugs on the day, or within a matter of days or weeks before . . . [r]ather, 'the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct.'" Salley v. Circuit City Stores, 160 F.3d 977, 980 n.2 (3d Cir. 1998) (citing 29 C.F.R. § 1630.3)). See also Figueroa v. Fajardo, 1 F. Supp. 2d 117, 120 (D.P.R. 1998) ("ADA specifically excludes from coverage individuals 'currently engaging in the illegal use of drugs' from the definition of 'qualified individual with a disability.'").

Plaintiff wholly failed to address this Third Circuit case law in his opposition because he knows it is fatal to his claim. As established above, Plaintiff cannot sustain his claims under the ADA because he cannot be considered "qualified for the job sought" under the ADA. Plaintiff

---

[1] The CSA does not permit the use of a Schedule I drug at any time. 21 U.S.C. § 812(b)(1)(B) ("The drug or other substance has no currently accepted medical use in treatment in the United States.). Unlike New Jersey law, the ADA does not provide any carve-out or similar language permitting "outside the workplace" drug use. Cf. N.J. Stat. Ann. § 24:6I-6.1c(1) (permitting an employer to prohibit "intoxicating substances" during work hours or on the work site).

readily admits his off-duty use of marijuana, which, according to the ADA, the CSA and case law, means he was "currently engaging" in the use of an illegal drug. While Plaintiff attempts to excuse his actions by asserting that this only occurred after work hours, the ADA does not provide an exemption for such conduct. Plaintiff was currently engaging in federally illegal conduct during the weeks and months prior to the adverse employment action from Diamond Materials[2] and, as such, cannot be considered a qualified individual for purposes of an ADA discrimination claim.

Thus, the Court must dismiss Counts I and II of Plaintiff's Complaint with prejudice.

### C. CUMCA DOES NOT CREATE A PRIVATE RIGHT OF ACTION.

Plaintiff's opposition fails to identify any provision where the New Jersey State Legislature created a private right of action in the Jake Honig Compassionate Use Medical Cannabis Act, N.J. Stat. Ann. § 24:6I-2, et seq. ("CUMCA") statute. Plaintiff's desire for a private right of action cannot defeat the plain language of the statute and the Court should not create one where the legislature did not see fit to create one.

When a court is called upon to review New Jersey state statute, the determination of "[t]he Legislature's intent is the paramount goal," and "generally, the best indicator of that intent is the statutory language [itself]." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). The plain language is the best indicator for the legislature's intent because the legislature is presumed to know how to draft language. See Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009) ("The Legislature knows how to draft a statute to achieve that result when it wishes to do so."). To determine the Legislature's intent, a court should

---

[2] Solely for the purposes of the Motion, the allegations in Plaintiff's Complaint are accepted as true pursuant to Fed. R. Civ. P. 12(b)(6). However, Plaintiff repeatedly states in its brief that Plaintiff's prior employer, Advanced Pavement Group ("APG") is a predecessor to Diamond Materials. This statement is not alleged in Plaintiff's Complaint and is expressly denied by Diamond Materials. Diamond Materials did not acquire APG and is not a success of APG. The Court should disregard this unfounded statement as it is outside the pleading and entirely unfounded.

begin with the words of the statute and ascribe to them their ordinary meaning. Mason v. City of Hoboken, 196 N.J. 51, 68 (2008) (citing DiProspero, 183 N.J. at 492). Further, "[i]t is not the function of this Court to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero, 183 N.J. at 492. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). A court "cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment.'" DiProspero, 183 N.J. at 492 (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952)). Nor may the court "'engage in conjecture or surmise which will circumvent the plain meaning of the act.'" Ibid. (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)). Therefore, if the meaning of those words is clear, the analysis is complete. Mason, 196 N.J. at 68.

An honest reading of the plain language of the CUMCA statute evidences there is no private right of action and Plaintiff fails to identify any language that would suggest otherwise. Plaintiff's main argument is that "[t]he legislature would not have included the protections . . . if it did not want to ensure that registered medical marijuana users had a private remedy if employers discriminated against them based on their cardholder status." (Dkt. 5, p. 7); contra Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416, 428 n.3 (App. Div. 2019), aff'd. 241 N.J. 285 (2020) (finding CUMCA did not "create a private cause of action against an employer for wrongful discharge.").[3] Plaintiff's untethered speculation should be rejected by the Court.

While the Plaintiff implores the Court to rewrite the plainly written statute to include a private right of action (Dkt. 5, p. 7-9), this would run in direct contradiction to other statutes that

---

[3] Plaintiff, in his opposition, does not contest that the New Jersey Supreme Court in Wild upheld the Appellate Division's conclusion that CUMCA did not create a private cause of action against an employer, and the New Jersey Supreme Court reasoned that any direct claims against an employer would arise from the LAD, not CUMCA.

the legislature, both state and federal, deemed appropriate to include a private right of action. See, e.g., N.J. Stat. Ann. § 10:6-2 (creating a private right of action under NJ Civil Rights Act); N.J. Stat. Ann. § 56:8-19 (creating a private right of action under NJ Consumer Fraud Act); 42 U.S.C. § 12188 (creating a private right of action under the ADA); 42 U.S.C. §§ 3602(i), 3613(a) (creating a private right of action under the Fair Housing Act).[4]  The legislature expressly did not draft any language into the CUMCA that is remotely close to other statutes that includes a private right of action.

Finally, even if there was any debate about whether CUMCA could be implied to provide a private right of action, New Jersey courts have been consistent that the presumption must cut against finding a private cause of action and that courts should be "reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001).

Consequently, the Fifth Count of Plaintiff's Complaint must be dismissed with prejudice.

### D. PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER THE NJLAD BECAUSE HE IS AN AT-WILL EMPLOYEE AND DOES NOT BELONG TO A PROTECTED CLASS.

Plaintiff's opposition is glaringly silent regarding his status as an "at-will" employee because he cannot challenge the inevitable conclusion that medical marijuana users are not a recognized protected class under the New Jersey Law Against Discrimination.

The first prong of any New Jersey Law Against Discrimination, (N.J. Stat. Ann. § 10:5-1 et seq.) ("NJLAD") claim requires a plaintiff to plead that he belongs to a protected class. See

---

[4] Plaintiff's opposition refers to the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J. Stat. Ann. ("CREAMMA").  CREAMMA is wholly irrelevant because this statute expressly only covers recreational marijuana users.  See N.J. Stat. Ann. § 24:6I-32a (regulating marijuana similar to alcohol).  Plaintiff has not pled an allegation within his Complaint that would suggest any involvement with the recreational use of the Schedule I drug.  In addition, CREAMMA, like CUMCA, contains no private right of action.

Clowes v. Terminix Int'l Inc., 109 N.J. 575, 596 (1988). This missing prong is fatal to Plaintiff's NJLAD claims. Further, CUMCA's expressed exemption for employers that receive federal funds for federal contracts, like Diamond Materials does, only further eliminates any possible NJLAD claim that Plaintiff could consider asserting against Diamond Materials.

> **i. Medical Marijuana Users Are Not A Protected Class Under The NJLAD.**

Plaintiff fails to point to any case to rebut the inescapable conclusion that medical marijuana users are not a protected class under the NJLAD. (Dkt. 3-1, p. 12-14). Moreover, "New Jersey is a presumptively 'at-will' employment state." McCrone v. Acme Mkts., 561 F. App'x 169, 172 (3d Cir. 2014) (citing Bernard v. IMI Sys., Inc., 131 N.J. 91 (1993). "In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine." Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 339 (App. Div. 2021).

Without a statute or law expressly creating a protected class for medical marijuana users in all circumstances, Plaintiff cannot make out a valid NJLAD claim. See Eplee v. City of Lansign, 327 Mich. App. 635, 655-57 (2019) (explaining that the medical use of marijuana does not create a protected class for users); see also Elansari v. Ragazzo, 857 F. App'x 54, 56 (3d Cir. 2021) cert. denied, 142 S. Ct. 463 (finding that medical marijuana users are not members of a protected class).

Plaintiff, as a matter of law, cannot establish a claim against Diamond Materials under the NJLAD, because medical marijuana users are not a protected class, and as such, these claims should be dismissed with prejudice.

> **ii. Diamond Materials' Exemption Under CUMCA As An Employer Who Receives Federal Funding Through Federal Contracts Also Nullifies His NJLAD Claims Against Diamond Materials.**

Plaintiff has not identified any law that would require him to be hired by Diamond Materials in a safety-sensitive position or that would even deem him qualified to be hired. Plaintiff

{H0331849.1}                                         8

was refused a safety-sensitive position as a general construction laborer who would have been on construction sites with heavy equipment and machinery, even if he himself would only be utilizing "shovels, rakes, and other small tools."[5] (Dkt. 5, p. 11). Further, applicable State law does not and cannot require employers such as Diamond Materials to choose between: (a) hiring someone who tests positive for marijuana whose employment would jeopardize public funding and federal regulatory compliance; or (b) facing unsubstantiated claims of discrimination for not hiring that individual. See N.J. Stat. Ann. § 24:6I-6.1(c)(2) (stating that "[n]othing in this section shall be deemed to require an employer to commit any act that would cause the employer to be in violation of federal law, that would result in a loss of a licensing-related benefit pursuant to federal law, or that would result in the loss of a federal contract or federal funding."). See Cotto v. Ardagh Glass Packing, Inc., No. 18-1037 (RBK/AMD), 2018 U.S. Dist. LEXIS 135194 (D.N.J. Aug. 10, 2018) (finding the LAD does not require an employer to accommodate an employee's use of medical marijuana with a drug test waiver).

In short, Diamond Materials' business operations and the applicable legal framework governing those operations left Diamond Materials with two options as it pertained to the hiring and employment of Plaintiff. Option one, hire Plaintiff to avoid any appearance of discrimination, despite the fact that Plaintiff is deemed unqualified for the position due to his illegal drug use, and put Diamond Materials' critical public funding, contract eligibility and federal regulatory compliance at significant risk; or, option two, refuse to hire the Plaintiff and face unsubstantiated claims of discrimination. No law, New Jersey or Federal, requires an employer such as Diamond Materials to be forced into this type of "lose-lose" scenario.[6]

---

[5] Solely for the purposes of the Motion, the allegations in Plaintiff's Complaint are accepted as true pursuant to Fed. R. Civ. P. 12(b)(6).

[6] Plaintiff only offers a passing reference to the major concerns laid out in Diamond Materials' moving papers regarding the Drug-Free Workplace Act ("DFW Act") (41 U.S.C. §§ 701 et seq.) and the Occupational Health and Safety Act ("OSHA"), (29 U.S.C. §§ 651 et seq.). See (Dkt. 3-

Pursuant to the risks faced by Diamond Materials if it hired the Plaintiff, Diamond Materials validly determined that it could not hire the Plaintiff. The decision not to hire Plaintiff was, therefore, permissible by law, and required under federal law to protect the business interests and survival of Diamond Materials and not for any discriminatory or unlawful purpose.

## II.  CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendant's Motion to Dismiss be granted in its entirety.

Respectfully submitted,

HYLAND LEVIN SHAPIRO LLP

By: _____
Megan Knowlton Balne, Esquire
Attorney for Defendant,
Diamond Materials LLC

Dated:  March 27, 2023

---

1, p. 15-17). For brevity's sake, Diamond Materials expressly incorporates its arguments herein by reference. Plaintiff's opposition claims that these statutes "do not prohibit the use of medical marijuana outside of the workplace" (Dkt. 5, p. 10) but fails to identify anywhere that these statutes **expressly permit** the use of medical marijuana outside of the workplace. There is no rational way to take Plaintiffs' position, asking the Court find that the DFW Act and OSHA permit the use of medical marijuana outside of the workplace and harmonize them with the express language in the CSA, identifying marijuana as a Schedule I drug. See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 143-44 (2001) ("Indeed, 'when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'") (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)).