**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DOUGLAS DRIFT**, <br><br> Plaintiff, <br><br> v. <br><br> **DIAMOND MATERIALS, LLC**, <br><br> Defendant. | Civil Action No. 22-7503 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Diamond Materials, LLC ("Defendant" or "Diamond Materials") pursuant to Fed. R. Civ. P. 12(b)(6). ("Motion", ECF No. 3.)  Defendant filed a memorandum of law in support of the Motion. ("Moving Br.", ECF No. 3-1.)  Plaintiff Douglas Drift ("Plaintiff") opposed the Motion. ("Opp'n Br.", ECF No. 5.)  Defendant filed a reply. ("Reply Br.", ECF No. 6.)

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion to Dismiss Counts I and II of the Complaint and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

1

I.      **<u>FACTUAL BACKGROUND</u>**[1]

Plaintiff initiated the instant action by filing his Complaint on December 23, 2022. ("Compl.", ECF No. 1.) Plaintiff alleges that, in or around 2020, Plaintiff was diagnosed with generalized anxiety disorder and prescribed medical marijuana to manage his symptoms. (*Id.* ¶¶ 15–16.) Plaintiff used medical marijuana only in the evenings; he never used it during the day. (*Id.* ¶ 16.)

Plaintiff worked for Advanced Pavement Group ("APG") until February 2021 when APG ceased operations due to financial struggles. (*Id.* ¶¶ 17–18.) Diamond Materials absorbed APG's remaining contracts, and Plaintiff's former supervisor, Todd Bigelow, began working for Diamond Materials as Vice President and General Manager. (*Id.* ¶¶ 18–19.) In February 2021, Mr. Bigelow asked Plaintiff to apply for a position with Diamond Materials. (*Id.* ¶ 20.)

Plaintiff applied to Diamond Materials on about February 25, 2021. (*Id.* ¶ 21.) The position for which he applied involved manual labor and focused on asphalt paving. (*Id.* ¶ 22.) The pay rate would have been $24 per hour, and Plaintiff would have worked 45 to 50 hours per week throughout the 2021 construction season. (*Id.* ¶¶ 21–22.)

On or about March 11, 2021, Penny Hildemann, an administrative assistant working for Diamond Materials, emailed Plaintiff to schedule a drug test for March 17. (*Id.* ¶¶ 23–24.) Two days before the test, Plaintiff emailed Ms. Hildemann, stating: "I am prescribed medical marijuana. So I will not pass the drug test for the company. For THC. If this is a problem, please let me know." (*Id.* ¶ 25.) The following day, Ms. Hildemann replied to Plaintiff's email, stating: "Unfortunately it's a problem only because the drug test is through the federal drug testing and not the state drug testing. Sorry." (*Id.* ¶ 26.) Plaintiff replied: "So I would be taking the Department of

---

[1] For purposes of this motion, the Court will take all facts alleged in the Complaint as true. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

Transportation drug test?" (*Id.* ¶ 27.)  Ms. Hildemann replied: "No you will not be hired. You will not pass either one according to Diamond Material standard drug testing." (*Id.*)  Later the same day, Ms. Hildemann called Plaintiff, told him there was a "misunderstanding," and instructed him to appear for the drug test. (*Id.* ¶ 28.)

On March 17, Plaintiff met with Brian Smith, Diamond Materials' Safety Coordinator. (*Id.* ¶ 30.)  Plaintiff provided Mr. Smith with a copy of his medical marijuana registry identification card and explained his reason for using medical marijuana. (*Id.* ¶ 31.)  Mr. Smith said: "If you come up positive for any drugs other than THC, you will not be hired." (*Id.*)  Plaintiff completed the drug test at a nearby laboratory. (*Id.*)

On or about March 24, 2021, Mr. Smith called Plaintiff and informed him that he tested positive for marijuana. (*Id.* ¶ 32.)  Mr. Smith said that he needed to ask Defendant's legal counsel whether they could hire Plaintiff. (*Id.*)  He said that he would inform Plaintiff within a couple days, but that if Plaintiff did not receive a call, it meant he would not be hired. (*Id.*)  Mr. Smith did not contact Plaintiff. (*Id.* ¶ 33.)

## II.     PROCEDURAL HISTORY

On December 23, 2022, Plaintiff filed a complaint with five counts. (*Id.* ¶¶ 40–56.)  Counts I and II allege discrimination and retaliation, respectively, under the Americans with Disabilities Act of 1990 ("ADA"). (*Id.* ¶¶ 40–46.)  Counts III and IV allege discrimination and retaliation, respectively, under the New Jersey Law Against Discrimination ("NJLAD"). (*Id.* ¶¶ 47–52.)  Count V alleges discrimination under New Jersey's Jake Honig Compassionate Use Medical Cannabis Act (the "Compassionate Use Act"). (*Id.* ¶¶ 53–56.)  On March 6, 2023, Defendant filed the instant Motion, seeking to dismiss all counts. (ECF No. 3.)

### III. **JURISDICTION**

The Court has original jurisdiction over Counts I–II pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining state claims.

### IV. **LEGAL STANDARD**

Upon reviewing a motion to dismiss under Rule 12(b)(6), "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). If the plaintiff is unable to plead sufficient facts to state a claim to relief that is plausible on its face, a motion to dismiss should be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is sufficient, a court must take three steps. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Third, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. In sum, this court's inquiry is normally broken into three parts (1) identifying each element of the claim, (2) striking conclusory allegations, and (3) reviewing the components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus*, 641 F.3d at 563.

4

V.     **DISCUSSION**

    A.     **COUNTS I AND II: DISCRIMINATION AND RETALIATION UNDER THE ADA**

Plaintiff alleges claims for discrimination and retaliation under the ADA. (Compl. ¶¶ 40–46.) Defendant argues that because Plaintiff uses medical marijuana, he is not a "qualified" individual under the ADA. (Moving Br. at 9.) For the reasons discussed below, the Court agrees.

The ADA prohibits employers from discriminating against a "qualified individual" because of a known physical or mental disability. 42 U.S.C. § 12112. A *prima facie* case for a discrimination claim under the ADA requires a plaintiff to establish that he (1) was disabled, (2) was qualified for the job, and (3) suffered an adverse employment decision because of his disability. *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010)). On the other hand, to establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

The ADA states that "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). The ADA defines the "illegal use of drugs" as:

> the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act. Such term does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

42 U.S.C. § 12111(6)(A). The Controlled Substances Act ("CSA") classifies marijuana as a Schedule I drug with no accepted medical use. 21 U.S.C. § 812.

Plaintiff, referencing the second sentence of the ADA's definition, argues that medical marijuana taken under the supervision of a health care professional falls outside the ADA's definition of "illegal use." (Opp'n Br. at 6.) This argument, however, detaches the first phrase of the second sentence from the remainder of the definition. The second half of that sentence, "or *other* uses authorized by the Controlled Substances Act or other provisions of Federal law," clarifies that the supervised medical uses contemplated in the first phrase are those authorized under the CSA or other Federal law. 42 U.S.C. § 12111(6)(A) (emphasis added). Had Congress wished supervision by a licensed health care professional to act as an independent authorization, the word "other" would have been omitted. This interpretation also maintains consistency with the first sentence, which defines "illegal use" by reference to the CSA. Accordingly, the use of marijuana precludes an individual from being "qualified" under the ADA if the employer acts based on this use. *Lehenky v. Toshiba Am. Energy Sys. Corp.*, Civ. No. 20-4573, 2022 WL 523739, at *3 (E.D. Pa. Feb. 22, 2022), *aff'd*, Civ. No. 22-1475, 2023 WL 3562981 (3d Cir. May 19, 2023); *James v. City of Costa Mesa*, 700 F.3d 394, 397 (9th Cir. 2012) *cert. denied*, 569 U.S. 994 (2013).

Plaintiff next argues that the CSA authorizes medical marijuana use because the CSA leaves room for states to regulate controlled substances. (Opp'n Br. at 6.) In support of this argument, Plaintiff cites *Gonzales v. Oregon*, where the Supreme Court stated that the CSA "contemplates a role for the States in regulating controlled substances. 546 U.S. 243, 251 (2006). But in *Gonzales*, this principle was applied to Schedule II drugs, which can be legally prescribed. *Id.* at 254. The CSA classifies marijuana as a Schedule I drug, which prohibits even medical use. 21 U.S.C. § 812; *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 491–92 (2001). *Gonzalez* therefore does not support Plaintiff's proposition.

Finally, Plaintiff argues that other provisions in the ADA indicate that "the ADA was never intended to regulate drug use *outside the workplace*." (Opp'n Br. at 5) (emphasis in original). Plaintiff references § 12114(c), which states that an employer "may prohibit the illegal use of drugs and the use of alcohol at the workplace by all employees." 42 U.S.C. § 12114(c)(1). But § 12114(c) does not limit § 12114(a). The term "currently engaging" in § 12114(a) is not limited to the use of drugs on the day of the employment action, or even to the weeks before the employment action. *Salley v. Cir. City Stores, Inc.*, 160 F.3d 977, 980 n.2 (3d Cir. 1998) (citing 29 C.F.R. § 1630.3 App. (1996)). If § 12114(a) can apply to drug use days or weeks before the employment action, it is not limited to drug use at the workplace. Therefore, Plaintiff's use of medical marijuana is not protected by the ADA. Accordingly, Plaintiff's ADA discrimination and retaliation claims both fail. For these reasons, Defendant's Motion to Dismiss as it relates to Counts I and II will be granted for failure to state a claim, and Counts I and II will be dismissed without prejudice.

  **B.**  **COUNTS III–V: JURISDICTIONAL ISSUES**

The dismissal of Counts I and II—the only two federal claims of the Complaint—deprives the Court of original jurisdiction over this matter based on federal question. 28 U.S.C. § 1367(a) confers district courts with supplemental jurisdiction over "claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(c), however, gives district courts discretion to decline to hear claims they would otherwise have supplemental jurisdiction to entertain pursuant to § 1367(a). § 1367(c)(3) provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). While the determination is discretionary, "[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised

where there is no longer any basis for original jurisdiction." *Schaffer v. Twp. of Franklin*, Civ. No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.").

Here, the Complaint also alleges that jurisdiction is proper under 28 U.S.C. §and 1332. (Compl. ¶¶ 2–4.) Diversity jurisdiction under Section 1332 requires that: (i) all defendants are diverse from all plaintiffs and (ii) the amount in controversy is at least $75,000. In support of the Court's jurisdiction, the Complaint alleges that

1. At all times material, Defendant DIAMOND MATERIALS, LLC (hereinafter also referred to as "DIAMOND MATERIALS") was and is a foreign limited liability corporation existing under the laws of the State of Delaware.
2. At all times material, Defendant DIAMOND MATERIALS was and is authorized to conduct business in the State of New Jersey and does conduct business in the State of New Jersey.
3. At all times material, Defendant DIAMOND MATERIALS was and is a full service construction site contractor, which is headquartered at 242 North James Street, Ste 102, Newport, DE 19804.

(*Id.* ¶¶ 11–13.) This is the incorrect standard to determine citizenship of a limited liability company. Rather, the citizenship of a limited liability company is determined by the citizenship of its members. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). The Complaint incorrectly applies the rule to determine the citizenship of *corporations*. *Lincoln Benefit Life*, 800 F.3d at 104.

A federal court has an obligation to address a question of subject matter jurisdiction *sua sponte*. *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990); *see*

*also* 28 U.S.C. § 1447.  The statute "compels a district court to address the question of jurisdiction, even if the parties do not raise the issue." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995).

Insofar as Counts I and II of the Complaint will be dismissed for failure to state a claim and Plaintiff has failed to sufficiently plead diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over Counts III–V of the Complaint.  For the reasons set forth above, the Court will grant leave to Plaintiff to file an Amended Complaint to address the deficiencies noted above.

### VI.  CONCLUSION

For the reasons stated above, Court will GRANT Defendant's Motion to Dismiss Counts I and II of the Complaint and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  An appropriate Order will follow.

Date: **August 18, 2023**

                                                    s/ Zahid N. Quraishi  
                                                  **ZAHID N. QURAISHI**  
                                                  **UNITED STATES DISTRICT JUDGE**